McKee **CATON** et ux., Appellants,

v.

George P. **KELLEY** et al., Appellees.

No. 15221.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 8, 1968.

Rehearing Denied March 7, 1968.

Kelley, Looney, McLean & Littleton, Rogers Kelley, Edinburg; and Barrow, Bland & Rehmet, Sidney Farr, Houston, for appellants.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, Frank J. Knapp, Jr., Houston, for appellees.

BELL, Chief Justice.

This is an appeal from the action of the trial court in granting the defendants' motion for summary judgment and rendering a judgment that the plaintiffs take nothing.

The suit was filed by McKee Caton and his wife, Grace Caton, against George P. Kelley and Original Kelley's to recover damages resulting to Mrs. Caton from injuries she received when she slipped and fell on the floor of the restaurant operated by Mr. George Kelley which is located on South Main Street in Houston. The evidence shows that she received a broken ankle and she contends that a back condition which she already had was aggravated by the fall. The fall occurred about the 17th of January, 1964.

The record before us consists of the parties' pleadings, the defendants' motion for summary judgment, the plaintiffs' reply to the motion for summary judgment, to which reply is attached an affidavit of Mr. R. D. Smith, and the depositions of Dr. and Mrs. Caton, George P. Kelley, and an employee of Mr. Kelley's at the restaurant by the name of Paul Chefchis. The basic theory of recovery is that there was some foreign substance on the floor of the restaurant and that Mrs. Caton stepped on the foreign substance causing her to slip and fall.

We must review rather extensively the testimony to determine whether or not there is any evidence from which an inference of negligence on the part of Kelley's representatives can be inferred that was the proximate cause of the alleged injury. We must view that evidence most favorably to the plaintiffs who were resisting the motion for summary judgment because the burden is on the movant in a summary judgment case to show that there was no issuable material fact under the evidence. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

Mrs. Caton, as well as Dr. Caton, testified that they together with Mr. and Mrs. R. D. Smith went to the Original Kelley's Restaurant on Main Street at about 8 p. m. on the day in question. They entered the restaurant from the Main Street side and were seated near the back of the restaurant. There is a passageway or aisle that leads from the Main Street entrance back to the table where they were seated. They walked to their table without incident, but they made no particular observation with regard to the condition of the floor of the aisle or the area around the table where they sat. Other patrons of the restaurant on that night also used the aisle and no other patrons were seen to have slipped, nor is there any evidence of anyone else having slipped either that evening or at any other time. The floor consisted of a covering of vinyl. The Catons and their friends remained at the restaurant until about 10 p. m. When they had finished their dinner at about this time, they started back down the same aisle over which they had made their entry, toward the cashier's position, but just after

leaving the table Mrs. Smith being in the lead, Mrs. Caton being behind her, followed in order by Mr. Smith and Dr. Caton, Mrs. Caton slipped and fell on the floor breaking her left ankle. The testimony of Mrs. Caton shows that about 1916 she had polio and since that time has had weak muscles in her left leg though it appears that she needed no walking aids. She testified that on the night in question she had on low heeled shoes with neolite heels and soles. She wore this type of shoe though it was not a prescription shoe, because this gives a better balance than a high heeled shoe that is worn by many women. She testified that this was not the first fall that she had had, but that in about the fifty years since she had had polio she would say she had fallen about fourteen times. It appeared, however, from the testimony that she was accustomed to climbing mountains, and walking around in the yard at her home in McAllen that was irrigated and that frequently became soft and then when the soil dried out there were holes or depressions that were left by the yardman. All of her falls were not described but the specific ones that we recall are an undesignated number that occurred in her yard, the nature of which we have described, one that occurred on the sidewalk in Oklahoma City when she caught her heel in a crack in the sidewalk, and one that she experienced at her home when she was walking backward and fell against a chair. Mrs. Caton admitted that her left leg was not as strong as her right leg and that she walked with a slight limp, which was caused by what was referred to as a "drop" on the left side as a result of the polio. She had no built-up shoe. Mrs. Caton stated that just after leaving the table and as she was proceeding toward the cashier her right foot slipped from under her and both feet went out in front of her, and she fell on her left foot which had in some manner turned up under her. She stated definitely that the slipping, however, was with the right foot. After she fell she lay there on the floor and Dr. Caton told her to remain there, and she did remain there probably around 15 minutes. While she was there someone brought a napkin or a towel and placed it under her head. In a while she was removed from the restaurant and taken to the hospital.

Mrs. Caton testified that the lights in the restaurant were sufficient for a person to see where they were going though they were, as is true in many restaurants, more subdued than the lights used in an office. She testified she was watching where she was going and she was always careful because of the weakness in her left leg to watch where she was walking, and she could see this evening to walk without any difficulty. She testified that she did not know whether there was any water on the floor where she slipped. When asked whether she observed any water either before or after she fell, she stated that she didn't see any water. She also stated she didn't see any foreign substance like food on the floor. She made no complaint to the management about the condition of the floor. On entering the restaurant and proceeding to the table she didn't notice anything out of the ordinary about the floor in the area over which she proceeded. She stated that to the left of the place where she slipped there was a pantry that the waitresses came to and went from. Immediately after stating that she stepped with her right foot and slipped, she stated: "There was something slick." Up until the time she fell she had noticed nothing that would cause a person to fall. She also stated she didn't feel anything that would cause anyone to fall. She didn't see any foreign substance on the floor. She didn't see any spilled food; she saw nothing but the normal vinyl floor. She stated that while she was lying on the floor she observed no foreign substance, but at the same time she said, "I wasn't in that condition."

Mrs. Caton stated that she was not aware of any foreign substance being on her shoe or her foot, but she also stated, "I didn't look for any." She further stated that while she had the shoes and had worn them since the accident it was more than six months

before she looked at the shoes. She did not see any foreign substance on the shoes when she later looked at them. She stated also that there was no water on the floor after she fell but if there had been water there she mopped it up when she fell because it was not wet when she got up. She found no evidence on her garments or anywhere of any grease or oil or any foreign substance. When asked if up until the time she fell there was any condition of the floor that was unusual, she stated, "I had not observed any."

Dr. Caton testified substantially as did Mrs. Caton concerning the weakness in the muscle on the left side that controls the left foot. He also described substantially as did she the specific falls she had previously had that we have above mentioned. Further testimony by Dr. Caton showed that in 1963 Mrs. Caton had a slipped disc and that the right leg at the time was placed in traction. He said, however, that so far as he could see she had completely recovered from this latter difficulty. When Mrs. Caton fell in the restaurant he told the people not to move her, that he was a doctor and would do what was necessary. He stated he would determine when he thought she should be moved. He meant by this that he would have her moved after she had recovered from the shock. He did not know at this time that her left ankle had been broke. He testified substantially the same as did Mrs. Caton about their having entered the restaurant and having traversed the same aisle as they entered that they were using when they started to leave and when Mrs. Caton fell. Other people in the restaurant that night also used the same area as did the Catons and the Smiths. As they were leaving he saw Mrs. Caton when she was falling. After she fell and while she was on the floor she complained of her back and leg. Her left leg was twisted up under her. He observed no foreign substance on the floor such as food or water. In fact he stated, "I observed nothing." When asked if it wasn't true that so far as he could tell it was simply a vinyl cover-

ed floor and he did not know what caused his wife to fall, he answered, "I had made no examination of it." All he knew was that his wife fell, and she told him that her right foot slipped. On the night of the accident he made no complaint to anyone about the condition of the floor. When asked the question, "You saw nothing about the floor to complain about, did you, sir?" he answered, "I wasn't paying any attention to the floor."

Attached to the plaintiffs' reply to the defendants' motion for summary judgment is an affidavit by Mr. Smith, who was with the Catons. Among other things the affidavit contains this statement:

"Just a few minutes after she had fallen, while she was still lying there on the floor, the waitress who had waited on our table brought a towel or tablecloth or something to put under Mrs. Caton's head. At that time this waitress told me the floor was slippery and that earlier in the evening she herself had slipped twice and almost fallen in that same place on something that she said had been spilled on the floor there earlier that night. I noticed that the floor of the restaurant was very slick.

"* * *

"It seemed to me that she slipped on something that was on the floor and not simply on the floor itself, because she went down so fast that she didn't have a chance to catch herself. I didn't have time to catch her, although I tried."

The deposition of Mr. Paul Chefchis showed that he was the manager of the Corsiana Room of the South Main restaurant where the accident occurred. He gave a description of the room which showed that just a short distance, probably about 10 feet, from the place where Mrs. Caton fell there was a door to what is referred to as the "pantry". The waitresses would make their entry into and from this pantry when they were going to the kitchen to obtain food which was to be served the patrons. Also through this door the employees who re-

moved the dishes from the tables after the patrons had finished their meals would make their entry and go to the room where the dirty dishes were taken for washing. Mr. Chefchis did not see Mrs. Caton fall, because he was in another room adjoining that in which she fell. He stated, however, that he came into the room just after Mrs. Caton had fallen and it was between 9:30 and 10 o'clock p.m. Mrs. Caton was lying on the floor. She was a "little towards Main Street, towards the pantry when she fell." He and the other manager there, Mrs. Florence Austin, went up to where Mrs. Caton was lying. He did not remember how long she remained on the floor before she left but it was something less than 30 minutes, probably between 15 and 30 minutes. Mrs. Caton was being attended to and the witness left Mrs. Austin in charge of the matter and went on into the room where he worked. The evening had been quite a busy one, and probably a hundred people had been served. The witness did not know what caused Mrs. Caton to fall. No one there at the scene told him how she came to fall. He did hear somebody say that she had just come from the hospital or had had polio, and from that he concluded that her ankle must have given way, causing her to fall. He inspected the floor where she fell and he didn't find anything on the floor; the floor was not dirty. He looked around on the floor right after he approached where Mrs. Caton had fallen while she was still lying there and he didn't see anything around there. He did not, of course, see the floor under her while she was there. Since she was being attended to he went on back to the room where he worked, but later inspected the floor at probably around 10:30 o'clock when Mr. Kelley, the owner, came to the place. This was from 30 minutes to an hour after the accident had occurred. He passed his hand over the floor and could find no dirt on the floor. In fact, he was unable to find any foreign substance on the floor where she had fallen.

Mr. Chefchis then told about the system of cleaning the room each day. He testified that the floor was mopped each morning before 11 o'clock. It was mopped with a wet mop and only cold water was used in wetting the mop. No soap was used nor was any kind of detergent used. In the afternoon about 3 or 4 o'clock the floor was swept to remove anything that had been spilled or any papers or cigarettes or other substances that had accumulated during the day. There was no further sweeping or mopping of the floor until the next morning when the process above was repeated. He stated that once in a while there would be an accident and food would be spilled in the aisle but this happened very seldom. He stated he did not see any spilled food in the aisle where Mrs. Caton fell and when he checked for it there was none. When he checked he found no water or oil on the floor. There was no wax on the floor because the floor was never waxed. He stated that on each day a little food was dropped around the various tables where people might be eating. This is one of the reasons that on each day at mid-afternoon they sweep the whole floor. He had never known of anyone slipping on the floor and he had been there for five years, and he had never heard of anyone slipping on the floor. While he had never seen any people spill water on the floor he had heard that this sometimes occurred. He had never seen a waitress spill water on the floor but he had heard that that sometimes did happen.

Mr. George Kelley, the owner of the restaurant, arrived at the scene of the accident around 10:30 in the evening. He knew nothing about the accident, and his testimony consisted largely of a description of the room and what he observed when he arrived. He stated that the room was mopped each morning with cold water and that no detergent or soap was ever used on the vinyl floor covering. He stated that this was the only time that the floor was cleaned

and his testimony and Mr. Chefchis' conflicted in this regard. He stated that he was shown the table near which Mrs. Caton had fallen and he examined the floor and it was clean. The floor was never waxed. He testified that no one had, to his knowledge, ever slipped on the floor at the restaurant, nor had he ever heard of anyone slipping. The vinyl covering had been there on the floor for some five or six years. Nowhere in his testimony, or any other witnesses' testimony, was there shown to be any break or other imperfection in the flooring. Mr. Kelley stated that before putting the vinyl covering on the floor they used to have carpeting but the carpeting got too messy from the various things that might be spilled from time to time on the carpeting, and they removed the carpeting and substituted the vinyl. The vinyl flooring at the restaurant was not particularly shiny but it was clean. It was not, and never got, slick.

The appellees contend that the judgment of the trial court sustaining their motion for summary judgment should be sustained because nowhere in the testimony is there evidence that at the time of Mrs. Caton's fall there was any foreign substance on the floor and there was, therefore, no evidence of any negligent act that could have been the proximate cause of Mrs. Caton's fall. The appellants' position is that there may have been no direct evidence of any foreign substance on the floor, but circumstances are shown that reflect that from time to time each day food or water, cigarette stubs and paper are spilled or deposited on the floor and this, plus the above quoted portion of Mr. Smith's affidavit, is sufficient to circumstantially show that at the time of Mrs. Caton's fall there was something that had been spilled on the floor that caused her to slip. In this connection appellants stress also that she slipped with her right foot, as some of the testimony does reflect, and that her feet went out in front of her. Appellants rely heavily on the state-

ment of Mr. Smith as to what the waitress who had waited on his party said at the time she came to place a towel or napkin under Mrs. Caton's head, and the portion of this statement that they particularly rely upon is that *the waitress stated that earlier that evening she herself had slipped twice and almost fallen in that same place on something that she said had been spilled on the floor there earlier that night*. Also, of course, the appellants rely upon the testimony which shows that foreign substances, including water and food, are each day dropped on the floor and though no one saw a foreign substance on the floor where Mrs. Caton fell, when all circumstances are considered there could have been a substance there and in fact such was likely.

The evidence as to the presence of any foreign substance on the floor at the time and place that Mrs. Caton fell is but circumstantial. However, of course, a case of negligence and proximate cause may be established by circumstantial evidence. The evidence in this case as to the presence of any foreign substance is very meager. We are, however, of the view that when you consider all of the facts and circumstances testified to concerning water and food and other substances being spilled on the floor each day; that the room is not swept after four o'clock in the afternoon, and when you consider the res gestae statement of the waitress who waited on the Catons' table, there is evidence from which a jury could infer that there was a foreign substance and this substance was what Mrs. Caton slipped on.

We need not lengthen this opinion by analyzing all of the testimony. We are inclined to think that without the res gestae statement of the waitress, as testified to by Mr. Smith, there would be no dispute in the evidence that would raise a fact issue. However, her statement is such that the jury might infer that immediately before the fall at the place where Mrs. Caton fell there was

a slippery substance on the floor; that this was known to the appellees because the knowledge of their employee would be imputed to them and that there had been sufficient time to have cleaned the substance from the floor.

Each case must, of course, be considered in the light of the facts peculiar to it. The appellees urge that in all of the cases cited by appellants there was actually found to be a foreign substance at the place where the party had fallen. We have read all of the cases and such seems to be correct, with the exception possibly of the case of J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698, Tex.Com.App., opinion adopted, and even in the Brockman case a condition was shown to exist but there was no direct evidence to show that the condition that could have caused the fall in fact caused the fall. However, immediately following the fall of the plaintiff in the Brockman case, the manager of the store stated that the plaintiff was the fifth or sixth lady who had fallen there. The Commission of Appeals, recognizing that the testimony was very meager, found some evidence from which a jury might infer that the manner in which the sidewalk was constructed was negligent, particularly in the light of the res gestae statement of the manager of the store. The court also said that the statement of the manager constituted notice to the defendant of the existence of the condition and the fact that other persons had fallen there to be some evidence of probative force that the condition was the cause of the fall.

No useful purpose would be served by citing or noticing the cases relied upon by the appellants or the appellees. We notice the Brockman case because of the principles there stated and the fact that it is factually more nearly comparable to this case than are the other cited cases.

Judgment of the Trial Court is reversed and the cause is remanded for trial.