Gregory W. COLLINS, Appellant,

v.

COUNTY OF EL PASO, Texas, and County Judge Alicia Chacon, Stuart Schwartz, and Orlando Fonseca, Appellees.

No. 08–96–00018–CV.

Court of Appeals of Texas, El Paso.

Sept. 25, 1997.

Rehearing Overruled Nov. 12, 1997.

138 

Robert A. Skipworth, Francis S. Ainsa, Jr., Ainsa, Skipworth, Martinez & Driscoll, L.L.P., El Paso, for Appellant.

Michael C. Crowley, Edward Dunbar, Dunbar, Barill, Crowley & Hegeman, L.L.P., El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE, and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is an appeal from a summary judgment granted against Gregory Collins in favor of El Paso County, County Judge Alicia Chacon, and Commissioners Stuart Schwartz and Orlando Fonseca (collectively "The County"). In a declaratory judgment action, the trial court ruled as a matter of law that the County's attempted sale of real estate to Collins was void because the County had failed to comply with the procedures required by the Local Government Code, and that as a result, the County had no duty to close the sale. We reverse and remand.

### STATUTORY BASIS FOR SUIT

At issue here is the statutory interplay of two provisions of the Texas Local Government Code.[1] We set forth these provisions in their entirety to facilitate the factual and procedural summary that follows:

### LOCAL GOVERNMENT CODE

### TITLE 8. ACQUISITION, SALE, OR LEASE OF PROPERTY

### SUBTITLE B. COUNTY ACQUISITION, SALE, OR LEASE OF PROPERTY

### CHAPTER 263. SALE OR LEASE OF PROPERTY BY COUNTIES

### SUBCHAPTER A. GENERAL PROVISIONS FOR REAL PROPERTY

§ 263.007. Sale or Lease of Real Property Through Sealed–Bid Procedure

(a) The commissioners court of a county may adopt a procedure by which the county may sell or lease through a sealed-bid or sealed-proposal procedure any real property, including space in a building, owned by the county.

(b) The procedure must include a requirement that the county publish, before a sale or lease is made, a notice of its intent to

---

1. All further statutory references are to the Local Government Code unless otherwise specified.

sell or lease, as appropriate, the real property. The notice must:

(1) be published in a newspaper of general circulation in the county the commissioners court represents and, if the real property is located in another county, in a newspaper of general circulation in that other county;

(2) be published on two dates, with the date of the second publication occurring before the 14th day before the date the award of the sale or lease is made;

(3) include a description of the real property, including its location; and

(4) include a description of the procedure by which sealed bids or sealed proposals for the sale or lease may be submitted.

(c) Before selling property under this section, the commissioners court shall:

(1) obtain an appraisal of the property's fair market value; and

(2) determine a minimum bid amount, based on the appraisal.

(d) Under the procedure, the commissioners court may reject any and all bids submitted.

(e) The commissioners court of a county may lease real property owned or controlled by the county that was formerly owned or controlled by the Texas Department of Mental Health and Mental Retardation to a federal, state, or local government entity for any purpose or to a nonprofit organization that is exempt from federal taxation under Section 501(c)(3), Internal Revenue Code of 1986 (26 U.S.C. Section 501(c)(3)), to conduct health and human service activities or such other activities which the commissioners court finds to be in the public interest, without using the sealed-bid or sealed-proposal process described in Subsection (a) and without using any other competitive bidding process which would otherwise be required by law. If the commissioners court of a county chooses to lease under this subsection, the commissioners court shall declare its intent to do so through written notice posted in

the same place and manner as the commissioners court posts its regular meeting agenda not later than 30 days prior to the beginning of the lease period. In setting the terms and conditions of the lease, including but not limited to the amount of the lease payment, the commissioners court may consider local business custom regarding leases and the reasonable market value of the leasehold, but the commissioners court is not bound thereby and may also consider the extent to which the provision of services or the other activities to be performed by the lessee will benefit the public. This subsection does not limit the ability of a commissioners court to enter into interlocal agreements, contracts, or any other arrangement permitted by law.

(f) The procedure authorized by this section is an alternative procedure to the procedure authorized by Section 272.001.[2]

### SUBTITLE C. ACQUISITION, SALE, OR LEASE PROVISIONS

### APPLYING TO MORE THAN ONE TYPE OF LOCAL GOVERNMENT

### CHAPTER 272. SALE OR LEASE OF PROPERTY BY MUNICIPALITIES, COUNTIES, AND CERTAIN OTHER LOCAL GOVERNMENTS

**§ 272.001. Notice of Sale or Exchange of Land by Political Subdivision; Exceptions**

(a) Except for the types of land and interests covered by Subsection (b), (g), (h), or (I), and except as provided by Section 253.007, before land owned by a political subdivision of the state may be sold or exchanged for other land, notice to the general public of the offer of the land for sale or exchange must be published in a newspaper of general circulation in either the county in which the land is located or, if there is no such newspaper, in an adjoining county. The notice must include a description of the land, including its location, and the procedure by which sealed bids to purchase the land or offers to

---

2. Tex.Loc.Gov't Code Ann. § 263.007 (Vernon Supp.1997).

exchange the land may be submitted. The notice must be published on two separate dates and the sale or exchange may not be made until after the 14th day after the date of the second publication.

(b) The notice and bidding requirements of Subsection (a) do not apply to the types of land and real property interests described by this subsection and owned by a political subdivision. The land and those interests described by this subsection may not be conveyed, sold, or exchanged for less than the fair market value of the land or interest unless the conveyance, sale, or exchange is with one or more abutting property owners who own the underlying fee simple. The fair market value is determined by an appraisal obtained by the political subdivision that owns the land or interest or, in the case of land or an interest owned by a home-rule municipality, the fair market value may be determined by the price obtained by the municipality at a public auction for which notice to the general public is published in the manner described by Subsection (a). The notice of the auction must include, instead of the content required by Subsection (a), a description of the land, including its location, the date, time, and location of the auction, and the procedures to be followed at the auction. The appraisal or public auction price is conclusive of the fair market value of the land or interest, regardless of any contrary provision of a home-rule charter. This subsection applies to:

(1) narrow strips of land, or land that because of its shape, lack of access to public roads, or small area cannot be used independently under its current zoning or under applicable subdivision or other development control ordinances;

(2) streets or alleys, owned in fee or used by easement;

(3) land or a real property interest originally acquired for streets, rights-of-way, or easements that the political subdivision chooses to exchange for other land to be used for streets, rights-of-way, easements, or other public purposes, including transactions partly for cash;

(4) land that the political subdivision wants to have developed by contract with an independent foundation;

(5) a real property interest conveyed to a governmental entity that has the power of eminent domain; or

(6) a municipality's land that is located in a reinvestment zone designated as provided by law and that the municipality desires to have developed under a project plan adopted by the municipality for the zone.

(c) The land or interests described by Subsections (b)(1) and (2) may be sold to:

(1) abutting property owners in the same subdivision if the land has been subdivided; or

(2) abutting property owners in proportion to their abutting ownership, and the division between owners must be made in an equitable manner.

(d) This section does not require the governing body of a political subdivision to accept any bid or offer or to complete a sale or exchange.

(e) This section does not apply to land in the permanent school fund that is authorized by legislation to be exchanged for other land of at least equal value.

(f) The fair market value of land, an easement, or other real property interest in exchange for land, an easement, or other real property interest as authorized by Subsection (b)(3) is conclusively determined by an appraisal obtained by the political subdivision. The cost of any streets, utilities, or other improvements constructed on the affected land or to be constructed by an entity other than the political subdivision on the affected land may be considered in determining that fair market value.

(g) A political subdivision may acquire or assemble land or real property interest, except by condemnation, and sell, exchange, or otherwise convey the land or interests to an entity for the development of low-income or moderate-income housing. The municipality shall determine the terms and conditions of the transactions so as to effectuate and maintain the public purpose. If conveyance of land under this subsection

serves a public purpose, the land may be conveyed for less than its fair market value. In this subsection, 'entity' means an individual, corporation, partnership, or other legal entity.

(h) A municipality having a population of 250,000 or less and owning land within 5,000 feet of where the shoreline of a lake would be if the lake were filled to its storage capacity may, without notice or the solicitation of bids, sell the land to the person leasing the land for the fair market value of the land as determined by a certified appraiser. While land described by this subsection is under lease, the municipality owning the land may not sell the land to any person other than the person leasing the land. In this subsection, 'lake' means an inland body of standing water, including a reservoir formed by impounding the water of a river or creek but not including an impoundment of salt water or brackish water, that has a storage capacity of more than 10,000 acre-feet.

(I) A political subdivision that acquires land or a real property interest with funds received for economic development purposes from the community development block grant nonentitlement program authorized by Title I of the Housing and Community Development Act of 1974 (42 U.S.C. Section 5301 et seq.) may lease or convey the land or interest, without the solicitation of bids, to a private, for-profit entity or a nonprofit entity that is a party to a contract with the political subdivision if the land or interest will be used by the private, for-profit entity or the nonprofit entity in carrying out the purpose of the entity's grant or contract. The land or interest may be leased or conveyed without the solicitation of bids if the political subdivision adopts a resolution stating the conditions and circumstances for the lease or conveyance and the public purpose that will be achieved by the lease or conveyance.[3]

We turn now to a detailed discussion of the facts underlying the dispute and the procedural posture of the case.

### SUMMARY OF THE EVIDENCE

The El Paso County Commissioners' Court approved a trade of real estate on October 21, 1992. In exchange for 464.4 acres owned by the County in the W.J. Rand Survey, El Paso County received from the General Land Office (GLO) 381.90 acres in Section 16, Township 3, Block 79 of the T & P Railroad Survey. On December 9, 1992, Commissioners' Court authorized then-County Judge Chacon to sign a warranty deed conveying the 464.4 acres to the GLO, which in turn conveyed the 381.90 acres of the T & P Railroad property to the County. The land received by the County from the GLO forms the basis of this lawsuit.

On January 27, 1993, Commissioners' Court passed a motion providing that the land acquired from the GLO, described at this meeting as "the County Fairgrounds and Mixed Use Project property Sec. 16," would be subject to sale by sealed bids. On March 17, 1993, Commissioners' Court passed a resolution requiring the County either to obtain the appraisal of the property conducted by the GLO or, if the State's appraisal could not be obtained, to obtain an appraisal of the property from a private real estate appraisal firm. The County ultimately obtained the GLO's appraisal which valued the land at $2,554,000 as of May 14, 1992.

On September 24 and September 26, 1994, the County purchasing agent placed an advertisement for sealed bids in the *El Paso Times:*

NOTICE TO BIDDERS

Sealed bids for the following will be received at the Office of the County Purchasing Office until 2:00 p.m., Tuesday, October 11, 1994 to be opened at the County Purchasing Office. Specifications may be obtained at the County Purchasing Office, 500 East San Antonio,

Lower Level, Suite L108, El Paso, Texas.

All bids must be sealed and marked with bid number and opening date. Said contract shall be let to the lowest[4] [sic] re-

---

3. TEX.LOC GOV'T CODE ANN. § 272.002 (Vernon 1988 & Supp.1997).

4. County officials subsequently acknowledged that the advertisement should have stated that

sponsible bidder and the Commissioner's Court reserves the right to reject any and all bids and waive technicalities.

PITI VASQUEZ
County Purchasing Agent
94–079–Sale of Section 16
Loop 375 land for County of El Paso
T:9/24,26, 1994 (S# 450555)

The description of the land as "Section 16 Loop 375 land for County of El Paso" formed part of the subsequent controversy. The advertisement notified all possible bidders of the address where they could obtain the "specifications" on the property, which consisted of a packet containing a copy of the appraisal, a small map, and a copy of a survey. The full legal description of the property appeared at the bottom of the map contained in the packet: "Section 16, Block 79, Township 3, T & P Railroad Company, El Paso County."

The County received several inquiries in response to the first advertisement and four inquiries in response to the second. It gave information packets to two people and received one bid by Collins. Vasquez testified that none of the inquiries expressed any confusion as to the location of the property. On or about September 26, 1994, Collins submitted a bid of $2,554,000 in the form of an earnest money contract and an earnest money check for $5,000.

On October 12, 1994, County Judge Chacon, and Commissioners Fonseca and Schwartz voted to accept Collins' bid to purchase the property; Commissioner Charles Hooten voted in opposition. The bid was accepted and Collins' earnest money check deposited. Commissioners' Court then placed the authorization of the County Judge to sign the warranty deed conveying the property to Collins on the agenda for November 30, December 7, and December 14, 1994. On November 30, the motion to sign the deed was tabled for one week. On December 7, the motion to sign the deed failed three votes to two, and was then tabled. On December 14, the Commissioners and County Judge Chacon unanimously voted to table the issue of signing the deed for six weeks.

On December 14, 1994, Assistant County Attorney Lee Shapleigh sent Collins a warranty deed and affidavit, which were to be used to close the transaction. Collins approved these documents. Two days later, Shapleigh placed the approval and signing of the deed on the Commissioners' Court agenda for December 21, 1994. On the eve of the session scheduled for December 21, the litigation that ultimately gave rise to this appeal began. The following summary does not give a complete account of the complex procedural history of the case below, but focuses on those aspects which bear most directly on the issues raised on appeal.

On December 20, 1994, County Judge–Elect Chuck Mattox, Commissioner Rogelio Sanchez and Commissioner Hooten filed suit as plaintiffs requesting a temporary restraining order, temporary injunction, and permanent injunction, each seeking to prevent Commissioners' Court from approving the sale and signing the deed to Collins. They alleged that the County should be enjoined because it had failed to comply with the provisions in the Local Government Code governing the sale of real property by counties. Specifically, they contended that the County had provided inadequate notice of the proposed sale in violation of TEX.LOC.GOV'T CODE ANN. § 263.007(b)(3). Further, they contended that the County had failed to obtain an appraisal that reflected the fair market value of the property before soliciting bids, as required by Section 263.007(c)(1). Lastly, they alleged that the citizens of the County would suffer irreparable harm from the completion of the sale because the property was actually worth far more than the proposed purchase price, which was based on an outdated appraisal. The trial court issued a temporary restraining order, setting hearing for December 30, 1994.

Collins intervened as cross-plaintiff on December 23, 1994, filing suit against the County, County Judge Chacon, and Commissioners Schwartz and Fonseca. Collins alleged that he would suffer a loss in excess of $1,900,000 if the sale of the land were not completed, based on his estimates of the

the contract would be awarded to the *highest* possible bidder.

value of the property after his company developed it. Further, Collins alleged that as a result of accepting his bid and allowing him to deposit the entire purchase price with the title company, the County became legally obligated to close the sale. Collins also contended that the act of signing and conveying the deed was ministerial and did not involve discretionary acts by Commissioners' Court. Finally, he claimed that no legal excuse existed because he had complied with all requirements for the sale. Collins asked the court to dissolve the temporary restraining order and issue a mandamus requiring the County to close the sale and deliver a signed general warranty deed.

Also on December 23, Collins filed his motion to dismiss the plaintiffs' petition and to dissolve the temporary restraining order, arguing first that the plaintiffs had failed to demonstrate their standing to request equitable relief, and alternatively that the County had complied with all procedural requirements necessary to complete the sale.

Plaintiffs responded with an amended petition, filed December 30, alleging that they had standing to request declaratory and injunctive relief both as citizens of the County that would suffer irreparable harm by the sale, and as county officials attempting to prevent an illegal and void sale. Further, the amended petition alleged that the proposed sale violated the statutory notice requirements because the notice published in the newspaper failed to provide section, block, and township information, and failed to provide an adequate description of the lot's physical location.

On January 4, 1995, the trial court issued a temporary injunction preventing the County from completing the sale of the property, declaring the attempted sale "illegal and void" for failure to comply with the notice and appraisal requirements of the Local Government Code and setting trial for May 8, 1995.

On January 11, 1995, the County filed its answer to Collins' cross-claim and petition for writ of mandamus, reiterating the two alleged inadequacies upon which the trial court had based its temporary injunction and alleging that the Commissioners' Court had failed to "adopt methods" to sell property pursuant to either TEX.LOC.GOV'T CODE ANN. § 263.001 or § 272.001. Finally, the County brought a counterclaim seeking a declaratory judgment that the County had no duty to close the sale. Specifically, the County claimed that the provisions of Chapter 263 of the Local Government Code precluded the County from closing, and no other provisions of the Code operated to protect the sale from a claim that it was void or illegal.

On May 11, 1995, the County filed a motion for summary judgment requesting the trial court to issue the declaratory judgment, contending that Section 263.007 controlled the attempted sale, and that it was impossible to demonstrate that its requirements had been satisfied as a result of:

(1) the alleged inadequacy of the property description contained in the newspaper notice, in violation of TEX.LOC.GOV'T CODE ANN. § 263.007(b)(3);

(2) the alleged failure to obtain an appraisal reflecting the fair market value of the property, in violation of TEX.LOC.GOV'T CODE ANN. § 263.007(c)(1); and

(3) the alleged failure of the County Commissioners to establish a minimum acceptable bid for the property after obtaining the appraisal, as required by TEX.LOC. GOV'T CODE ANN. § 263.007(c)(2).

In support of the second argument, the County offered summary judgment evidence in the form of an appraisal dated March 1995 valuing the property approximately 11 percent higher than the figure contained in the May 1992 GLO appraisal. In its third ground, the County pointed out that Section 263.007(c)(2), requiring County officials to "determine a minimum bid amount based on the appraisal," was distinct from Section 263.007(c)(1), which required the Commissioners' Court to obtain an appraisal to determine the fair market value of the property. The record allegedly provided no indication that after receiving the appraisal from the GLO, the County Commissioners established a minimally acceptable bid by vote. The County offered an affidavit from Commissioner Sanchez to establish that Commissioners' Court

had never voted on a minimally acceptable bid. Lastly, the County relied upon Section 271.028 ("[a] contract awarded in violation of this subchapter is void") to urge the trial court to issue a declaratory judgment that the attempted sale violated the Local Government Code and that the County was under no duty to complete the sale. The County then filed an amended counterclaim on May 12, 1995, requesting a declaratory judgment on the four grounds already described in the motion for summary judgment.

Following a hearing, the trial court granted summary judgment to the County, declaring:

(1) That Tex.Loc.Gov't Code Ann. § 263.007 governs the mode, method and manner of sale and must be complied with before the County could lawfully convey any real property.

(2) That the County "failed to comply with the following mandatory sections of the Texas Local Government Code," in two respects:

(a) by violating Tex.Loc.Gov't Code Ann. § 263.007(b)(1)(the notice requirement);

(b) by violating Tex.Loc.Gov't Code Ann. § 263.007(c)(2)(the establishment of a minimum bid requirement).

(3) That the County's acceptance of the bid offered by Collins' development company on October 12, 1994 was void because of the County's failure to follow the mandatory procedures of Section 263.007.

(4) That the County was under no duty to convey the property made the subject of the suit.

The summary judgment order was silent as to the adequacy of the appraisal used to determine fair market value; the County raises a cross-point of error with respect to the adequacy of the appraisal on appeal. Collins brings two points of error: first, that the trial court erred in granting summary judgment for the County; and second, that the trial court erred in granting relief that the County did not request. Because of our resolution of the first point of error, we do not reach the second.

## STANDARD OF REVIEW

We must first establish the principles governing the review of summary judgments on appeal. Summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Unlike other final judgments reviewed on appeal, we do not review the summary judgment evidence in the light most favorable to the judgment of the trial court. *Continental Savings Association v. Collins,* 814 S.W.2d 829, 831–32 (Tex. App.—Houston [14th Dist.] 1991, no writ). As explained in *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985), the movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, all admissible evidence favorable to the non-movant will be taken as true; every reasonable inference must be indulged in favor of the non-movant, and all doubts resolved in the non-movant's favor.

From a procedural perspective, we emphasize that summary judgment was granted with regard to the County's counterclaim, a motion for declaratory judgment. The County did not move for summary judgment as to Collins' petition in intervention. The County was therefore the counter-plaintiff on summary judgment, and Collins was the counter-defendant. Thus, the County bore the burden assumed by any plaintiff moving for summary judgment: it must prove that it is entitled to summary judgment as a matter of law on each element of its cause of action. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). If a plaintiff does not establish all the elements necessary to its cause of action, summary judgment is improper. *Wesson v. Jefferson Savings &*

*Loan Ass'n,* 641 S.W.2d 903, 906 (Tex.1982). There is no burden on the non-movant opposing the plaintiff's motion for summary judgment until the movant meets its burden of proof and the burden shifts. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 679 (Tex.1979). The burden does not shift until the movant has established that it is entitled to summary judgment as a matter of law.

### IN PARI MATERIA

In his first point of error, Collins contends that Tex.Loc.Gov't. Code Ann. § 263.007 and § 272.001(a) constitute companion provisions to be read *in pari materia,* and that both provisions apply to county governments attempting to sell real property. He argues that because the County complied with both statutes, the purported sale is valid.

The requirements common to both provisions are:

● two published notices in the newspaper;
● an adequate description in the advertisement of the real property, including its location;
● sealed bids;
● an appraisal to determine fair market value; and
● a minimum fourteen-day waiting period from the publication of the second notice to the acceptance of the highest bid.

Unlike Section 263.007(a), Section 272.001(a) does not require local governments to adopt a county procedure for the sale of real property, requiring only that the local governments comply with the enumerated requirements. Nor does it require local governments to establish a minimum acceptable bid.

### Waiver

 The County contends that Collins has waived any error that the sale was authorized under Section 272.001, suggesting that the trial court considered only Section 263.007 and that we are bound by the statute at issue in the court below. The County argues that because Collins, as non-movant below, never demonstrated that Section 272.001 was applicable, he cannot now argue

the applicability of Section 272.001 on appeal. We disagree. The issue of waiver arises in a summary judgment hearing only after the movant has discharged its burden of demonstrating that it is entitled to summary judgment as a matter of law. The County, as movant and counter-plaintiff, was required to demonstrate that it had no legal authority under the Local Government Code to convey the property. That the County chose to limit its arguments to Section 263.007 did not alleviate its burden to address all statutory provisions that would have authorized the sale. It did not address Chapter 272 at all, except as follows:

> Moreover, under the doctrine of *pari materi,* non-compliance with the bidding statutes is statutorily void. § 271.028 flatly states that 'A contract awarded in violation of this subchapter is void.' The section's specific application would be, *inter alia,* to § 272.001, the sister statute of § 263.007. *See* § 263.007(e). 'Two statutes which relate to the same subject matter should be harmonized and given effect.' *Texas Water Commission v. Acker,* 774 S.W.2d 270 (Tex.App.—Austin 1989, *affirmed* 790 S.W.2d 299). The preclusive effect of § 271.028 should apply to violations of § 263.007.

This singular reference to Section 272.001 does not constitute an allegation that the sale should be voided because the County had failed to comply with the statutory provision. We agree that these two provisions are *in pari materia.* However, Collins, as non-movant, bore no burden to respond where the movant's basis for summary judgment was legally insufficient. "The non-moving party has no duty or burden whatsoever in a summary judgment case until the moving party establishes its right to a summary judgment." *Bankers Commercial Life Insurance Co. v. Scott,* 631 S.W.2d 228, 232 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). *See also, Spencer v. City of Dallas,* 819 S.W.2d 612, 615 (Tex.App.—Dallas 1991, no writ). We therefore consider whether Section 272.001 applied to the attempted sale of real property at issue.

## Statutory Construction

We begin with the basic principles of statutory construction. If the meaning of a statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate. Instead, the statute should be given its common, everyday meaning. *Glasscock Underground Water Conservation Dist. v. Pruit*, 915 S.W.2d 577, 580 (Tex.App.—El Paso 1996, no writ). Where an ambiguity does arise, some fundamental principles of statutory construction should be observed. First, a court must consider all laws *in pari materia*, meaning we are to consider all laws related to the subject of the act and the general system of legislation of which the act forms a part. Our objective is to ascertain the consistent purpose of the legislature in the enactment of the laws and to carry out the legislative intent by giving effect to all laws bearing on the same subject matter, even if the laws were enacted in different sessions of the legislature. *Reed v. State of Texas Department of Licensing and Regulation*, 820 S.W.2d 1, 2 (Tex.App.—Austin 1991, no writ), *citing Wintermann v. McDonald*, 129 Tex. 275, 102 S.W.2d 167, 171 (1937). Second, Texas courts have adopted the principle of statutory interpretation expressed as *inclusio unius est exclusio alterius*, meaning that we are to assume that the purposeful inclusion of certain terms implies the purposeful exclusion of terms that are absent. *See Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 540 (Tex.1981); *Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Third, the legislature is not presumed to have done foolish or useless things; rather, in construing a statute it is presumed that the entire statute is intended to be effective, and that a just and reasonable result was intended. *Industrial Accident Board v. Martinez*, 836 S.W.2d 330, 332 (Tex.App.—Houston [14th Dist.] 1992, no writ).

In addition to these principles of statutory construction provided by case law, the Texas Code Construction Act provides basic principles for interpreting the relevant provisions of the Local Government Code. TEX.GOV'T CODE ANN. §§ 311.001 *et seq.* (Vernon 1988). First, Section 311.025(b) provides:

(b) Except as provided by Section 311.031(d), if amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each. If the amendments are irreconcilable, the latest in date of enactment prevails.

Second, TEX.GOV'T CODE ANN. § 311.026 provides:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

## Interplay Between Section 263.007 and Section 272.001

With these principles of statutory construction in mind, we now consider how Section 263.007 and Section 272.001(a) interrelate. We are confronted with two different statutory provisions, both of which appear to empower county governments to sell county-owned property. The two provisions should be harmonized and given full effect wherever possible, and the more specific provisions should control over the more general if such a construction does not create other irreconcilable conflicts. A summary of the requirements for a sale of real estate contained in Section 263.007 and Section 272.001(a) reveals that they mirror one another in most respects.

In Section 272.001, subsection (a) establishes a procedure that units of state government must observe when selling real property. Subsections (b) through (I) then create exceptions to the general rule found in subsection (a). The requirements under Section 272.001(a) for a valid sale are:

● notice to the general public of the offer of land;

● to be published on two separate dates;

- in a newspaper of general circulation;
- including "a description of the land, including its location;"
- including the procedure by which sealed bids to purchase the land or offers to exchange the land may be submitted; and
- the sale or exchange of the land cannot occur until the fourteenth day after the publication of the second advertisement.

Section 272.001 is silent as to the requirement that the unit of state government obtain an appraisal on which to evaluate the sealed bids. However, subsections (b), (f), and (h) all refer to the determination of fair market value by appraisal, and all the subsections refer to the sale of land for fair market value determined either by appraisal or by public auction. Section 272.001(a) does not explicitly require an appraisal to determine fair market value because some units of government are allowed to determine fair market value either by appraisal or by public auction. Although the legislature is presumed to exclude words for a purpose, we would reach an absurd result if we concluded that the procedure outlined in Section 272.001(a) was intended to take place in the absence of an appraisal to determine fair market value. The Office of the Attorney General has confirmed that Section 272.001 prohibits the conveyance of public land for less than fair market value. Op.Tex. Att'y Gen. No. DM–232 (1993). Unless the circumstances of a specific sale allow for the determination of fair market value by public auction, an appraisal is the only way to establish the fair market value that the statute requires. We conclude that an appraisal to determine fair market value constitutes an implicit requirement of Section 272.001(a).

These requirements of Section 272.001(a) are identical to the requirements found in Section 263.007(b)(1)-(4). In addition, Section 263.007(a) states that the "commissioners court of a county may adopt a procedure by which the county may sell or lease through a sealed-bid or sealed-proposal procedure any real property, including space in a building, owned by the county." This procedure, adopted at the discretion of a commissioners' court, must at a minimum include the requirements for a sale outlined above

from Section 272.001(a) and Section 263.007(b). Section 263.007(c)(1) explicitly requires the commissioners to obtain an appraisal to determine fair market value, and Section 263.007(c)(2) requires the commissioners to determine a minimum bid amount based on the appraisal. Finally, Section 263.007(f) states, "The procedure authorized by this section is an *alternative procedure* to the procedure authorized by Section 272.001." [Emphasis added.]

This statement—that Section 263.007 and Section 272.001 are parallel alternative procedures for the sale of county-owned land—conclusively indicates that the legislature intended § 272.001 to apply to counties. Moreover, Chapter 272 is entitled "SALE OR LEASE OF PROPERTY BY MUNICIPALITIES, COUNTIES, AND CERTAIN OTHER LOCAL GOVERNMENTS." The use of the phrase "political subdivision of the state" of Texas in Section 272.001(a) further indicates that counties are included among those units of government covered by this provision, since counties are defined as the state's political subdivisions. Where a statute is clear on its face, it should be given its common, everyday meaning. *Pruit*, 915 S.W.2d at 580. Section 272.001(a) is a provision of general application to political subdivisions of the state that seek to sell or exchange real estate. Section 263.007 also applies to the sale or exchange of real estate, but applies exclusively to county governments. As such, the two provisions clearly should be read *in pari materia*; as the County itself phrased it, they are "sister statutes." *Reed*, 820 S.W.2d at 2.

Because principles of statutory construction dictate that the legislature is not presumed to do useless or foolish things, and because Section 263.007 and Section 272.001(a) should not be construed as superfluous in their creation of the same powers for counties, one might conclude that the creation of Section 263.007 was intended to remove county governments from those units of state government covered by Section 272.001(a). This interpretation would be bolstered by the principle of statutory construction found in Tex.Gov't Code Ann. § 311.026: "If a general provision conflicts with a special

or local provision, the provisions shall be construed, if possible, so that effect is given to both."

In the absence of Section 263.007(f), this construction might be valid. However, Section 263.007(f) plainly states that Section 263.007 is an *alternative* procedure to the one outlined in Section 272.001(a), not the procedure that counties must follow *in lieu of* Section 272.001. The legislature has specifically instructed us not to view Section 263.007 as more specific and therefore controlling over Section 272.001 in the case of counties. Because the legislature has explicitly declared these two provisions to be parallel alternatives for counties seeking to sell real property, we cannot apply principles of statutory construction to reach a result contrary to the explicit legislative intent.

We conclude that Section 272.001(a) provides the requirements for a valid sale of real property to the general public through a sealed bid procedure by units of local government ·in general, including counties, and that these requirements form an alternative, parallel procedure to the procedure created specifically for counties in Section 263.007. Since Section 263.007 requires the adoption of specific procedures at the discretion of the county commissioners, the procedure outlined in Section 272.001(a) constitutes the "default," minimally sufficient procedure with which all units of state government, including counties, must comply in order to conduct a valid sale. Moreover, we find that a reading of Section 272.001(a) in the context of Section 272.001 as a whole makes it clear that Section 272.001(a) intends units of state government to obtain an appraisal in order to ascertain fair market value. This reading of Section 263.007 and Section 272.001(a) serves to harmonize the two provisions while giving effect to both. The legislature intended Section 263.007 to provide county governments with a mechanism to draft and adopt more specific, extensive requirements relating to the sale of real property, while ensuring that any such rules adopted by a county would contain the minimum requirements for a public sale of real estate.

This construction bears directly on the validity of the summary judgment granted here. The County, as movant, had the burden to demonstrate its entitlement to summary judgment under Section 272.001 unless it established as a matter of law that the County had "adopted a procedure" triggering application of Section 263.007. We must next address whether the County met its burden to establish the adoption of such a procedure.

## NO ADOPTION OF PROCEDURE

■ Section 263.007 requires that county commissioners adopt a procedure to implement a sealed-bid or sealed-proposal procedure by which a county can sell real property, and that they determine a minimum bid amount based on the appraisal. The record before us does not reflect that Commissioners' Court ever adopted its own procedure whereby county-owned real property could be sold by sealed-bid. The County argues that the intention of the Commissioners to proceed under Section 263.007 could be inferred from their actions in attempting to sell the disputed property by a sealed bid procedure; however, Section 272.001(a) also contains provisions for sealed bids. The phrase "adopt a procedure" in Section 263.007(a) strongly suggests official action by a commissioners' court. BLACK'S LAW DICTIONARY (5th Ed.1979) defines "adopt" as follows:

> To accept, appropriate, choose, or select. To make that one's own (property or act) which was not so originally. To accept, consent to, and put into effective operation; as in the case of a constitution, constitutional amendment, ordinance, court rule, or by-law.

We are unwilling to imply the adoption of local procedures by examining the Commissioners' actions, especially given that the adoption of a procedure under Section 263.007(a) is discretionary, and intended as an alternative to the "default" procedure contained in Section 272.001(a).

The absence in the record of any indication that County Commissioners adopted a procedure to sell real property by sealed bid renders moot a discussion of the second element required in Section 263.007—the determination of a minimum bid under Section 263.007(c)(2). We note, however, that unlike Section 263.007(a), Section 263.007(c)(2) does

not use a phrase such as "adopt a procedure" or "pass a resolution." Indeed, Section 263.007(c)(2) contains no clear requirement that the county commissioners must establish a minimum bid by passing a resolution; it requires only that the commissioners use the appraisal as the basis for determining whether bids are minimally acceptable. The County urges us to accept that the disputed sale took place under the aegis of Section 263.007 without any evidence that the commissioners "adopted a procedure" for selling real estate, yet also urges us to affirm the summary judgment because the record reflects no official resolution establishing a minimum bid. Section 263.007(a) explicitly requires the adoption of a procedure, whereas Section 263.007(c)(2) requires only that the commissioners determine the minimally acceptable bid based on the appraisal. Were we to examine the validity of the attempted sale under Section 263.007, we would not consider the absence of an official vote by the Commissioners concerning a minimum bid as dispositive, but would instead examine the record for indications that the County complied with the appraisal obtained from the GLO in deciding whether a bid was acceptable. We conclude that if the disputed sale had occurred under Section 263.007, facts present in the record would be sufficient to create an issue of fact as to whether the commissioners used the appraisal they obtained to establish a minimally acceptable bid.

## COMPLIANCE WITH PROVISIONS COMMON TO SECTION 263.007 AND SECTION 272.001(a)

Although we do not believe that the disputed sale in the present case took place pursuant to a procedure adopted by virtue of Section 263.007, we find that the County nevertheless complied with the notice requirements common to both Section 263.007 and Section 272.001(a):

● notice on two different dates;

● in a newspaper of general circulation in El Paso County;

● with the second notice at least fourteen days before the date that the sale is awarded to the highest bidder;

● containing a description of the real property, including its location; and,

● containing a description of the procedure by which sealed bids to purchase the land or to exchange land may be submitted.

In addition, Section 272.001(a) implicitly requires the county to determine the fair market value of the property to be sold.

The County has attacked the adequacy of the property description contained in the notices published by the County purchasing agent. Further, it has challenged the validity of the appraisal used to establish the value of the disputed property, alleging that an appraisal completed approximately two and one-half years before the attempted sale did not accurately reflect the fair market value. The trial court rejected the challenge to the GLO appraisal; the County has raised this issue on appeal in the form of a cross point of error, which we will address separately.

## Allegedly Inadequate Property Description in Notice of Sale

 Before evaluating the County's arguments concerning the notice and appraisal requirements, we must determine the standard of review that is applicable to this argument. The County alleges that county officials failed to comply with the notice requirements by including an ambiguous description of the property in the advertisement that solicited sealed bids. It does not allege that county officials disregarded the notice requirements entirely, but claims that the ambiguity amounted to a complete disregard of the statutory requirement that the newspaper advertisement contain "a description of the land, including its location." Where a commissioners' court fails to abide by a competitive bidding statute or other statutory requirements imposed by the legislature, then the substantial evidence rule is not involved in the court's review. *Cameron County Good Government League v. Ramon*, 619 S.W.2d 224, 230 (Tex.Civ. App.—Beaumont 1981, writ ref'd n.r.e.). *See also J.D. Abrams, Inc. v. Sebastian*, 570 S.W.2d 81, 84–85 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.)(substantial evidence rule not involved where allegation involved

failure to provide notice as required by statute). Thus, with respect to the allegation concerning the failure to provide an adequate description of the property, we do not apply the substantial evidence rule and the deference it affords to the decision-making process of county commissioners.

The County clearly complied with all the notice requirements other than the property description. It published two advertisements in a newspaper of general circulation in El Paso County; the notice conveyed the County's intention to sell a specific lot; the notice described the sealed-bid procedure; finally, a bid was accepted at least fourteen days after the publication of the second advertisement. Further, the County cannot dispute that it did in fact publish a description of the property: the advertisement informed potential bidders that Section 16, located on Loop 375 in El Paso County was for sale. The sole issue with respect to the adequacy of the notice relates to whether the description of the real property satisfied the statutory requirement of a "description of the real property, including its location."

■ County officials must strictly comply with the property description requirement in TEX.LOC.GOV'T CODE ANN. § § 263.007(b)(3) and 272.001(a) in order to provide valid notice of a sale. As the court in *Clayton v. Newton*, 524 S.W.2d 368, 372 (Tex.Civ.App.— Fort Worth 1975, no writ) held:

> If a state statute or rule of court prescribes the method by which notice must be given in a particular instance . . . and if it prescribes the form of the notice that must be given in such instance, then the method prescribed by the statute or rule for giving notice is generally held to be exclusive and the form prescribed must be followed with reasonable strictness. [Authorities omitted.]

The purpose of strict compliance with notice provisions in the context of competitive bidding was articulated in *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex.Civ.App.—Dallas 1951, no writ). Competitive bidding requires the soliciting of bids through advertising in such a manner as to place all potential bidders on an even playing field. This fair and equal treatment is necessary to achieve the best possible bid for the unit of local government. *Sterrett*, 240 S.W.2d at 520. Strict compliance with notice requirements therefore provides all bidders with an equal opportunity to compete, and maximizes the economic efficiency of the bidding process for the unit of government. An ambiguous property description contained in a public notice would hurt both potential bidders and the unit of government alike.

In *West Orange–Cove Consol. Independent School District v. Smith*, 928 S.W.2d 773 (Tex.App.—Beaumont 1996, n.w.h.), the trial court had granted injunctive relief to prevent the completion of the sale of real estate by a school district. The newspaper advertisement ran on December 16 and December 18, 1994. The advertisement should have stated that the last date for submitting bids was January 6, 1995, but stated instead January 6, 1994. Holding that the error in dates constituted a *de minimus* typographical error, and that the trial court should not have enjoined the sale of property resulting from this notice, the court of appeals noted that "[t]here was no evidence anyone was deceived by the incorrect cutoff date, nor was harm shown by the publication of the incorrect date." *West Orange–Cove Consol. Independent School District*, 928 S.W.2d at 775. Further, the Court observed that any potential bidder who picked up the bid packet from the school district would have received all the information necessary to submit a bid on the property, including the correct cutoff date. *Id.*

■ From the advertisement published in the instant case, potential bidders knew that the county intended to sell Section 16, located on Loop 375, in El Paso County. Potential bidders who inquired received a packet containing a GLO appraisal of the property, a small map showing the location of the property, and a copy of the survey of the property that provided its precise metes and bounds. The map, which shows Loop 375 on the west side of the property, describes the property as "Section 16, Block 79, Township 3, T & P Railroad Company, El Paso County."

A still more extensive description of the land appeared in the warranty deed submitted to Collins for his approval:

381.90 acres out of the northeast quarter and part of the south part of Section 16, Block 79, Township 3, Texas and Pacific Railroad Company Survey, School File Numbers 145575 and 145580, as described by metes and bounds in Exhibit B, attached hereto and incorporated herein by reference for all purposes.

The Exhibit "B" to which this description refers, consisted of the survey notes providing the metes and bounds for the property.

The County contends that in order to satisfy Section 263.007(b)(3) and Section 272.001(a), the description contained in the County's advertisement should have included the most detailed of these three different descriptions, found in the unsigned warranty deed. We conclude that although the advertisement could have included this level of detail concerning the property, the Local Government Code did not require this description, and County officials fulfilled the statutory requirement when they used the brief description that actually appeared. Both Section 263.007(b)(3) and Section 272.001(a) require a "description of the land, including its location." It is undisputed that the advertisement contained a "description of the property," and that Loop 375 and El Paso County provided two indications of the land's location. Neither Section 263.007(b)(3) nor Section 272.001(a) specifies that a full legal description must be advertised, or that "location" must be defined by metes and bounds. Moreover, uncontradicted testimony before the trial court established that there was only one Section 16 on Loop 375, so that potential bidders were not given a description that could have led them to more than one property. Anyone who seriously considered bidding on the property had to obtain a packet from the County purchasing agent before they could proceed further in the bidding process. There was no question where the packets could be obtained. A potential bidder who obtained the packet received a survey of the property, a map of the property and its environs, and an appraisal.

While these facts differ from the typographical error in *West Orange–Cove Consol. Independent School District*, 928 S.W.2d at 773, the record here contains no indication that potential bidders found the initial property description in the newspaper article ambiguous or otherwise misleading. Whatever uncertainty remained after reading the newspaper advertisement was cured by the information contained in the bid packet. The purposes underlying strict compliance with statutory notice requirements in the competitive bidding context were satisfied. *See Sterrett*, 240 S.W.2d at 520.

The trial court erred in granting summary judgment declaring that the County's attempted sale of real property to Collins failed to comply with the statutory notice requirements.

### Allegedly Inadequate Appraisal

■ The County brings a cross-point of error alleging that the trial court erred in failing to find that the County had not obtained a valid appraisal of the fair market value of the disputed property. This allegation requires us to evaluate the decision making of County Commissioners under the substantial evidence standard of review. The County obtained an appraisal from the GLO that was conducted by a qualified appraiser. Section 263.007(c)(1) requires only that county officials obtain an appraisal to establish the fair market value of the land; Section 272.001(a) implicitly requires the same procedure. The County cannot allege that county officials committed an illegal act by disregarding the statutory requirement to obtain an appraisal altogether; rather, it alleges that when county officials attempted to comply with the statute, they abused their discretion by obtaining an appraisal that underestimated the fair market value of the land. If a reviewing court is called upon to evaluate the factual determinations or acts committed by statute to the discretion of the commissioners' court, then the reviewing court is limited to finding the existence of substantial evidence or to ascertain whether the action taken was arbitrary or capricious. *See discussion in Cameron County Good Govern-*

*ment League,* 619 S.W.2d at 229–31; *see also Moncrief v. Tate,* 593 S.W.2d 312 (Tex.1980).

In conducting a substantial evidence review, we determine whether, when evaluating the evidence as a whole, reasonable minds could have reached the decision reached by the agency that led to the disputed action. *City of El Paso v. Public Utility Comm'n,* 916 S.W.2d 515, 520 (Tex.App.— Austin 1995, dism. agr.), *citing Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *City of El Paso,* 916 S.W.2d at 520. The appealing party bears the burden of demonstrating a lack of substantial evidence. *City of El Paso,* 916 S.W.2d at 520, *citing Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984). The appealing party cannot meet this burden simply by showing that the evidence preponderates against the agency decision. *City of El Paso,* 916 S.W.2d at 520, *citing Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d at 452. If substantial evidence would support either affirmative or negative findings, we must uphold the agency decision and resolve any conflicts in favor of the agency decision. *City of El Paso,* 916 S.W.2d at 520, *citing Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex.1974). If more than a scintilla of evidence supports the commissioners' decision, the decision can be considered supported by substantial evidence. *United Indep. School Dist. v. Gonzalez,* 911 S.W.2d 118, 123 (Tex.App.—San Antonio 1995), *writ denied,* 940 S.W.2d 593 (Tex.1996). The supervisory powers of a court over the judgments of a commissioners' court can only be invoked when it acts beyond its jurisdiction or clearly abuses discretion conferred on it by law. *City of Fort Worth v. Groves,* 746 S.W.2d 907, 916 (Tex.App.—Fort Worth 1988, no writ), *citing Yoakum County v. Gaines County,* 139 Tex. 442, 163 S.W.2d 393, 396 (1942).

The County seeks to invalidate the GLO appraisal conducted by a certified appraiser on two grounds. First, it argues that the phrase "obtain an appraisal" contained in the statute means "obtain a new appraisal from a non-governmental source." It contends that the GLO appraisal is not reliable because it originates in another government agency and was conducted for the purpose of the land trade between that agency and the County. We find no support for this interpretation of the statutory requirement of an appraisal. The statute focuses exclusively on ascertaining fair market value; the source of the appraisal or the purpose for which it was conducted have no bearing on the validity of the appraisal. The County has failed to demonstrate that the origin of the appraisal caused it to misrepresent fair market value.

Second, the County directly addresses the issue of fair market value by suggesting that the age of the GLO Appraisal made it an unreliable basis for determining fair market value in October 1994. The Local Government Code does not specify how recent the appraisal must be in order to reflect fair market value and form the basis of a valid sale. Texas courts have defined fair market value as the price a property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no obligation to buy it. *State v. Windham,* 837 S.W.2d 73, 77 (Tex.1992). In condemnation law, this value is determined at the time of the taking. *R.H. McAshan v. Delhi Gas Pipeline Corp.,* 739 S.W.2d 130, 131 (Tex.App.—San Antonio 1987, no writ). In the present case, the time of taking would correspond roughly to the time the County accepted the highest bid, October 12, 1994.

The County offered as summary judgment proof another, more recent appraisal. The first, issued May 14, 1992, valued the property at $2,554,000. The second, dated March 31, 1995, valued the property at $2,830,000 as of October 12, 1994. The difference was $276,000, or 11 percent. Both appraisals were conducted by qualified real estate appraisers. Both were based in part on evaluations of sales of comparable properties. The first examined the sales of eighteen comparable properties from 1983 to 1991; six of these sales occurred in the 1990's. The second

examined the sales of eight comparable properties from 1990 to 1994. The former appears more thorough; the latter appears more current.

We acknowledge that the alternative appraisal submitted by the County is based on more recent comparable sales of real estate in order to estimate the worth of the disputed property, but we also note that the appraisal employed by the County contains a more extensive analysis of property values in the area. Finally, the summary judgment evidence includes the testimony of yet a third certified real estate appraiser who stated under oath that the GLO appraisal accurately reflected the fair market value of the property as of October 12, 1994. Based on the record before us, we cannot conclude that the use of the GLO appraisal lacked the support of substantial evidence. More than a scintilla of evidence supported the Commissioners' Court's decision. The trial court did not err when it refused to declare as a matter of law that the County failed to comply with the appraisal requirement of Section 263.007(c)(1) and Section 272.001(a). The County's cross-point is overruled.

Collins' first point of error is sustained. The summary judgment of the trial court is reversed and the cause remanded.