COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 SUZANNE RIDNER
 and MARCUS RIDNER,
  
                             Appellants,
  
 v.
  
 WALGREEN CO. and
 MIKE TIMPE,
  
                             Appellees.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00277-CV
  
 Appeal from the
  
 44th District Court
  
 of Dallas County, Texas
  
 (TC# 01-1076)
 
 




                                                                              

O
P I N I O N

Appellants Suzanne and Marcus Ridner (Athe Ridners@) appeal from the trial court=s grant of summary judgment for appellees Walgreen Co. and Mike Timpe
(AWalgreen@) on the Ridners= premises liability claims for
damages arising from an incident which occurred at a Walgreen store in Dallas
County.  We reverse the trial court=s judgment and remand this cause for
trial.

Facts








On May 14, 2000, appellant Suzanne Ridner was shopping at a Walgreen store in Dallas, Texas
for an automobile sunshade.  Sunshades
were located in the automotive products section.  Items in that section were vertically displayed
on nine-inch wide pegs that were hung off of a pegboard backing.  The sunshades were hanging next to a peg
containing five AClubs,@ a security device for automobiles.  Each Club weighs about four and a half
pounds.  While looking for a sunshade, a
Club fell from a height of about five feet onto Ridner=s right foot.  Ridner sustained an
injury which caused the development of a chronic pain condition.

After initial discovery, Walgreen
moved for summary judgment contending that the Ridners
failed to produce any evidence, or in the alternative any evidence that created
genuine issues of material fact, that Walgreen had actual or constructive
knowledge of the condition which caused the Club to fall on Ridner=s foot, and that that condition posed
a unreasonable risk of harm to its invitees. 
The trial court granted the motion. 
The Ridners timely appealed.

A.  The Standard of
Review.

Walgreen filed both a no-evidence and
a traditional summary judgment motion. 
The trial court=s opinion is not clear as to whether it granted either or
both summary judgments.








A no‑evidence summary judgment
is properly granted if the non‑movant fails to
bring forth more than a scintilla of probative evidence to raise a genuine
issue of material fact as to an essential element of the non‑movant=s claim on which the non‑movant
would have the burden of proof at trial. 
See Tex. R. Civ. P. 166a(i); Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert.
denied, 523 U.S. 1119, 118 S.Ct. 1799, 140
L.Ed.2d 939 (1998).  If the evidence
supporting a finding rises to a level that would enable reasonable, fair‑minded
persons to differ in their conclusions, then more than a scintilla of evidence
exists.  Havner,
953 S.W.2d at 711.  
Less than a scintilla of evidence exists when the evidence is A>so weak as to do no more than create
a mere surmise or suspicion=@ of fact, and the legal effect is that there is no evidence.  Ianni v. Loram Maintenance of Way, Inc.,
16 S.W.3d 508, 513 (Tex. App.-‑El Paso 2000, pet. denied).[1]








A traditional summary judgment is
proper if the record demonstrates there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a
matter of law.  See Tex. R. Civ.
P. 166a(c).  The purpose of summary judgment is the
elimination of patently unmeritorious claims or untenable defenses; it is not
intended to deprive litigants of their right to a full hearing on the merits of
any real issue of fact.  Collins v. County of El Paso, 954 S.W.2d 137, 145 (Tex. App.‑‑El
Paso 1997, pet. denied); Gulbenkian v. Penn,
151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  Unlike other final judgments reviewed on
appeal, we do not review the summary judgment evidence in the light most
favorable to the judgment of the trial court. 
Collins, 954 S.W.2d at 145; Continental
Savings Association v. Collins, 814 S.W.2d 829, 831‑32 (Tex. App.‑‑Houston
[14th Dist.] 1991, no writ).  The movant for summary judgment has the burden of showing there
is no genuine issue of material fact and that it is entitled to summary
judgment as a matter of law.  Nixon v. Mr. Property Management Co., Inc.,
690 S.W.2d 546, 548‑49 (Tex. 1985).  In deciding whether there is a disputed
material fact issue precluding summary judgment, all admissible evidence
favorable to the non‑movant will be taken as
true; every reasonable inference must be indulged in favor of the non‑movant and all doubts resolved in the non‑movant=s favor.  Collins,
954 S.W.2d at 145.

B.  The Elements of a
Premises Liability Case.

In their first issue, the Ridners contend the trial court, as urged by Walgreen,
improperly interpreted the elements of a premises liability cause of action,
such that they were placed under a higher burden of proof than was legally
warranted in this case.  The elements of
a premises liability cause of action are well-established under Texas law.  To prevail, the invitee plaintiff, in this
case the Ridners, must demonstrate that:

A.  Walgreen=s had
actual or constructive knowledge of some condition on the premises,

 

B.  That posed an unreasonable risk of harm,

 

C.  Which Walgreen=s failed
to exercise reasonable care to reduce or eliminate,

 

D.  Such that Ridner=s injuries were proximately caused by Walgreen=s failure to exercise reasonable care.

 








Keetch v. Kroger, 845 S.W.2d 262, 264 (Tex. 1992). 
Walgreen=s motion for summary judgment challenged the Ridners= proof with regard to the first two elements, that is,
whether Walgreen had actual or constructive knowledge of some condition in the
store, and whether that condition posed an unreasonable risk of harm.

We first confront the Ridners= claim that the trial court=s ruling was based on an erroneous
interpretation of the law.  To support
this argument, the Ridners assert that Walgreen
formulated the first element as requiring proof of actual or constructive
knowledge of a Adangerous@ condition, not Asome condition@ on the premises.  They further argue that Walgreen improperly
convinced the trial court that this was a proper statement of the first
element.

Whether or not the trial court
adopted this formulation of the first element to rule against the Ridners would require us to review the internal thought
process of the trial court.  We decline
to undertake that task particularly because we find no evidence in the record
that convinces us the trial court employed this analysis.  Even if there were such evidence, the remedy
would require us to engage in the same inquiry we utilize to review any summary
judgment, that is, did the trial court err in granting summary judgment because
the plaintiff produced evidence creating genuine issues of material fact for
resolution by the jury?








Although we therefore overrule the Ridners= first issue for review, we make the following
observations.  Strictly speaking, Walgreen=s stated formulation of the first
element of a premises liability claim that plaintiff must demonstrate it had
actual or constructive knowledge of a Adangerous@ condition on its premises is, at
worst, inaccurate.  See
Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d 1, 2-3 (Tex. 1996); Keetch, 845 S.W.2d 264.  The existence of Aactual or constructive knowledge of a
premises defect is a threshold requirement for such a [premises] claim.@ 
Motel 6, 929 S.W.2d at 3 (emphasis added).  There is thus no requirement imposed on
plaintiff to demonstrate the defect was Adangerous@ to satisfy element one.  However, the first two elements of a premises
claim speak to the existence of a duty. 
Ultimately it is therefore not inaccurate to say that to survive summary
judgment, plaintiff must produce some proof that the
premises owner had actual or constructive knowledge of a condition that posed
an unreasonable risk of harm or Adanger@ to the invitee.  Motel 6, 929 S.W.2d
at 3.

C.  The Ridners= Summary Judgment Proof.

The Ridners= Issues Two and Three urge that the
trial court erred as they presented evidence creating a fact question on the
first and second elements of their premises liability cause of action.  We find that they have.

It is undisputed that Walgreen
constructed and stocked the Club display, and that construction of the display
is the central issue with regard to liability in this case. However, Walgreen
completely denies any knowledge of a  problem with the display. Walgreen
specifically points to the fact that it never received any reports of any
problems with the display prior to the incident at issue in this case.  It also relies heavily on Suzanne Ridner=s testimony that she did not observe anything about the
display that seemed insecure prior to her injury.








That the owner or occupier of a premises created a condition that posed an unreasonable
risk of harm may support an inference of knowledge of the defect.  Keetch, 845 S.W.2d 265. 
Nevertheless, the mere fact that there is undisputed evidence that
Walgreen=s created and maintained the display
does not, without more, constitute sufficient evidence with which the Ridners can sustain their case.  Id. at 266.  We therefore must decide whether there was
other evidence concerning the knowledge element.

The Ridners
produced the following evidence to support their claim that Walgreen had actual
or constructive knowledge of the display=s defect.  Walgreen has no formal method by which it
tracks and documents hazards that might exist in a particular store.  Incident or complaint forms are never made
concerning customer complaints or accidents in the store.  For these reasons, unless the manager of the
store received an oral report of a problem from an employee or customer, he would
have no way of knowing that a problem existed that corporate or the local store
needed to address.  Mike Timpe, the store manager, did not recall any employee or
customer reports concerning problems with the Club display.  In any event, Timpe
also testified he would not have reported any problem to corporate unless he
had received more than one report of a problem with a particular display.








The construction and placement of
items on the pegboard display which held the Clubs was pre-determined by
corporate headquarters through Aplanograms@--diagrams of where each item should
be placed on the display.  Planograms do not contain information concerning how many
items should be placed on any given shelf or peg on the display.  Those decisions are left up to the stocking
clerks.

Timpe testified that the pegs which held
the Clubs could not simply be pulled out of the pegboard by a customer, nor
could they be knocked out of the pegboard by someone accidentally brushing up
against the display.  In Timpe=s store, the same size pegs were used on every display,
without regard to the number or weight of the items which hung from the
pegs.  Different size pegs were available
for use.  The pegs used here were
approximately nine inches long.  There
was no specific training or instructions received from corporate with regard to
safety limitations for the pegs or the shelves.       Timpe testified the Clubs were pre-packaged and pre-stamped
with two holes for hanging, although he did not know how many pegs had been
used to hang the Clubs that day.  Rebecca
Helgen, Timpe=s executive assistant, testified she
did not remember receiving special instructions to hang the Clubs from two
pegs.  Timpe
stated that he would have concerns about the safety of hanging the Clubs from
only one peg, and that it would be dangerous to hang more than four Clubs from
one peg.  Ridner
testified  there
were four Clubs still on the peg after the incident, giving rise to a
reasonable inference that there were five on the peg immediately before she was
injured.  Marcus Ridner
testified that when he looked at the display, there was only one peg for the
Clubs.  A diagram drawn by Ridner appears to indicate the Clubs were hung off a single
peg.








Helgen, who was in the store the day Ridner was injured, testified she discovered the Club
display had been taken down a month or so after the incident.  Tammy Provence, the
store manager present at the time of the incident, told an employee to remove
the Clubs from the pegboard immediately after the incident.  However, she never did an inspection of the
display following the incident.  She did
not know how many Clubs had been hanging from the display that day.

Timpe testified that the key to pegboard
safety was to insure that the product hung in a strictly vertical fashion from
the peg.  Corporate guidelines required
that each peg contain the maximum number of items possible to allow the product
to hang straight down.  Neither he nor Helgen knew whether the peg from which the Club fell was
improperly hung, bent, or otherwise defective, because neither checked the
display after the incident.  Helgen, who was in the store the day of the incident, had
not checked the Club display for a considerable amount of time before the
incident, and had not done a walk-through inspection of the store when she
arrived that day.

In his experience as store manager, Timpe had seen items that were improperly hung.  In those instances, he would speak to the
employee to correct the problem, and considered that a training issue.








Henry Wickes,
a mechanical engineer with a specialty in safety engineering, conducted
informal testing with an exemplar peg and several Clubs.  He found that the peg was pulled
downward.  He also stated that it would
have been difficult for Ridner to have seen the peg
sagging because she was facing it and the sag is only evident from a
right-angle view.  In his opinion,
Walgreen was negligent in their method of display for the Clubs and the way the
Clubs were displayed posed an unreasonable risk of harm.

Wickes was questioned as to whether safer
methods of display for the Clubs existed. 
Wickes detailed several alternatives including
a display method he had seen in other stores where the Clubs were placed on a
shelf horizontally and were contained in a cardboard box with slots separating
each item.  Wickes
also opined it would have been safer to adjust the height of the peg closer to
the floor so that if the peg drooped and a single item fell from the peg, the
force on impact would not be as great. 
He also stated that a peg that turned upward instead of straight out
would be less likely to permit the release of items from the peg and would
therefore be safer.  Lastly, Wickes testified that Walgreen should have recognized the
display posed a hazard because of the weight of the Clubs and the height from
which they were hung, such that a falling Club was likely to cause injury if it
fell from the display.








We agree with Walgreen that the
Supreme Court has consistently held that although proof that the premises owner
or occupier created a condition which poses an unreasonable risk of harm may
constitute circumstantial evidence of knowledge of the condition, mere creation
of the condition does not establish knowledge as a matter of law. Keetch, 845 S.W.2d at 266.  Evidence of other incidents attributable to
the same object, defects in the object, knowledge of employees of problems with
the object, and like indicia can be probative on this point.  Rosas v. Buddie=s
Food Store, 518 S.W.2d 534, 537 (Tex. 1975); Caton
v. Kelley, 424 S.W.2d 698, 703-04 (Tex. Civ.
App.--Houston [1st Dist.] 1968, writ ref=d
n.r.e.).

Keeping this burden in mind, we still
find that the trial court erred in granting summary judgment on this basis for
the following reasons.  Timpe testified that hanging more than four Clubs on a peg
could be dangerous.  Ridner
testified there were four Clubs left on the peg after one fell on her
foot.  Employees in the store at the time
of the accident and Timpe also testified the display
had not been checked the day of, or for several months prior to, the
incident.  They also confirmed that decisions concerning the number of items placed on any given peg
was made by stocking clerks who operated under the supervision of
managers.  This evidence creates a
genuine issue of material fact that Walgreen had actual or constructive
knowledge of a condition that could pose a danger-- that there were more than
four Clubs on the peg.

Timpe also testified he would be concerned
about the safety of the display if the Clubs, which had two pre-punched holes
in its packaging for display, were only hung from one peg.  Marcus Ridner
testified there was only one peg for the Clubs. 
Again, this evidence creates a genuine issue of material fact that the
Clubs were hung in a fashion which Walgreen admitted could be unsafe.








Finally, Walgreen maintains it had no
actual notice of any prior incidents or problems with the display.  However, the testimony of its employees
indicates that no written reports of such incidents are ever made.  Furthermore, if an incident occurred but was
not reported to an appropriate manager, no action would ever be taken
concerning the problem.  Indeed, Timpe admitted it would take more than one accident for him
to bother reporting any premises problem to corporate supervisors.  In other words, barring an admission against
their employers= interest, the Ridners
have no way of producing circumstantial proof of prior incidents.

Furthermore, although Walgreen=s employees testified they never had
a problem with the display, those same employees also testified the display had
not been inspected for several months before and after the incident.  One reasonable conclusion that can be drawn
from these facts in favor of the Ridners is that
Walgreen=s failure to maintain a record of
hazardous conditions on the premises, and its reliance on purely anecdotal
reports from its employees, permits potentially hazardous conditions to exist
on their premises.  This concern aside,
the Ridners did produce Wickes= testimony that Walgreen should have
known of the unreasonable risk posed by the Club display because of the height
from which the Clubs were suspended and their weight.

            The Ridners= evidence raises a genuine issue of
material fact as to whether Walgreen had actual or constructive knowledge of a
defective condition on their premises which it created.  We therefore find that the trial court erred
in granting summary judgment on this basis.








As detailed above, the Ridners offered expert testimony that Walgreen=s method of display for the Clubs
posed an unreasonable risk of harm.  The
evidence produced by the Ridners thus raises a
genuine issue of material fact on this issue. 
We therefore sustain the Ridners= second issue for review.  We therefore need not reach the Ridners= third issue.

Conclusion

The judgment of the trial court is
reversed and this cause remanded for trial. 

 

SUSAN
LARSEN, Justice

 

December 19, 2002

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 

(Do Not Publish)

 











[1]Because
we find that the Ridners met their burden to sustain
the challenge posed by the traditional summary judgment, we necessarily
determine that the no-evidence summary judgment was also inappropriate.