CITY OF EL PASO, Appellant,

v.

PUBLIC UTILITY COMMISSION OF TEXAS and El Paso Electric Company, Appellees.

No. 03–94–00250–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

Order Withdrawing Judgment March 13, 1996.

Norman J. Gordon, Diamond Rash Gordon & Jackson, P.C., Nanette G. Williams, Assistant City Attorney, El Paso, for City of El Paso.

Kerry McGrath, Clark, Thomas, & Winters, Austin, Dan Morales, Attorney General, for El Paso Electric.

Liz Bills, Assistant Attorney General, Energy Division, Austin, for Public Utility Commission.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

The City of El Paso brings this suit for judicial review of an order of appellee Public Utility Commission of Texas (the "Commission") in Docket No. 8018. *See* Tex.Public Util. Comm'n, *Inquiry into the Rate Case Expenses of El Paso Electric Company and the City of El Paso in Docket Nos. 7460 and 7172*, Docket No. 8018, 17 Tex.P.U.C.Bull. 545 (Sept. 20, 1991). In Docket No. 8018, the Commission determined the expenses appellee El Paso Electric Company ("El Paso Electric") and the City should recover from ratepayers for the costs El Paso Electric and the City incurred in litigating two prior Commission dockets. The City contends that the Commission should have disallowed some of El Paso Electric's requested expenses and should have allowed the City to recover a greater amount for its expenses. The district court affirmed the Commission's order.

We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Commission established Docket No. 8018 in 1988 to determine El Paso Electric's and the City's reasonable and necessary expenses in litigating issues ("rate case expenses") before the Commission in Docket Nos. 7460 and 7172. *See* Tex. Public Util. Comm'n, *Application of El Paso Electric Company for Authority to Change Rates* and *Application of El Paso Electric Company for Review of the Sale and Leaseback of the Palo Verde Nuclear Generating Station Unit 2*, Docket Nos. 7460 & 7172, 14 Tex.P.U.C.Bull. 929, 1206 (June 18, 1988).[1] It is undisputed that the Public Utility Regulatory Act ("PURA")[2] permits public utilities and municipalities to recover those expenses that the Commission finds reasonable. *See* PURA, Tex.Rev.Civ.Stat.Ann. art. 1446c, §§ 24(a), 39(a) (West Supp.1995).[3]

At a prehearing conference, the parties discussed methods of proving expenses and their reasonableness in the least burdensome and costly manner. Instead of using live testimony, the parties agreed to file affidavits of consultants well in advance of the hearing; if necessary, individual consultants would be available at the hearing for cross-examination. Examiner's Order No. 3 outlined the guidelines discussed at the prehearing conference for the offering of sufficient proof at the hearing. Most notably, the examiner observed that rate case expenses are subject to a strict-scrutiny standard of review: "[T]he Commission must be able to determine that the rate case expenses have been properly scrutinized and that the evidence is sufficient to support the recommendations in the Examiner's Report." The examiner also suggested that invoices and other supporting documentation for rate case expenses not be included as exhibits to testimony or affidavits, but be made available in discovery. Instead, the examiner suggested that the testimony of each witness offered to support rate case expenses should expressly state that the witness informally audited invoices and other documentation, and based on his or her review of the documentation, the witness should affirm that: (1) the individual charges and rates were reasonable as compared to usual charges for such services; (2) the amount of each service was reasonable; (3) the calculation of charges was correct; (4) no double billing of charges occurred; (5) no charges had already been recovered through

---

1. Docket Nos. 7460 and 7172 addressed the prudence of El Paso Electric's investment in Units 1 and 2 of the Palo Verde Nuclear Generating Station, also known as the Arizona Nuclear Power Project, and the propriety of a sale and leaseback of Unit 2. Docket Nos. 7460 and 7172 established rates which included El Paso Electric's "uncontested" rate case expenses. The rate case expenses at issue here were El Paso Electric's contested rate case expenses that were not decided in the two prior dockets and the rate case expenses requested by the City in the two prior dockets but excluded from the final rates set.

2. The 74th Legislature recodified PURA, effective April 5, 1995. *See* Public Util.Regulatory Act of 1995, 74th Leg., R.S., ch. 9, §§ 2–4, 1995 Tex. Sess.Law Serv. 31, 87–88 (West). The recodification constituted a nonsubstantive revision of PURA. *See id.* § 3(a), 1995 Tex.Sess.Law Serv. at 87. The instant cause is governed by the law in effect prior to the recodification, and for sake of convenience we cite to the pre-Code statutory provisions.

3. PURA § 39(a), applying to public utilities like El Paso Electric, provides:

> In fixing the rates of a public utility the regulatory authority shall fix its overall revenues at a level which will permit such utility a reasonable opportunity to earn a reasonable return on its invested capital used and useful in rendering service to the public *over and above its reasonable and necessary operating expenses.*

(Emphasis added).

PURA § 24(a), applying to municipalities like the City, provides:

The governing body of any municipality participating in or conducting ratemaking proceedings shall have the right to select and engage rate consultants, accountants, auditors, attorneys, engineers, or any combination thereof, to conduct investigations, present evidence, advise and represent the governing body, and assist with litigation in public utility ratemaking proceedings before the governing body, any regulatory authority, or in court. *The public utility engaged in such proceedings shall be required to reimburse the governing body for the reasonable costs of such services to the extent found reasonable by the applicable regulatory authority.*

(Emphasis added).

reimbursement for other expenses; (6) no charges should have been assigned to other jurisdictions; and (7) any allocation of charges between jurisdictions was reasonable.

Following a four-day hearing on the merits, the hearings examiner, in a report revised to correct previous miscalculations, recommended that El Paso Electric be allowed $10,758,627 and the City be allowed $1,104,405 as rate case expenses. The recommendation disallowed portions of expense reimbursement requested by both parties. The Commission remanded the proceedings to the hearings examiner to determine if underlying documentation supporting an award of $7,109,551 to El Paso Electric for expenses for a prudence audit of the Arizona Nuclear Power Project (the "ANPP")[4] existed in the form required by Examiner's Order No. 3.

In the hearing on remand, El Paso Electric made available additional documentation of its prudence audit expenses and filed spreadsheets summarizing those documents. After the hearing, the hearings examiner advised the Commission that underlying documentation which supported reimbursement of the $7,109,551 existed. The Commission's final order adopted the revised recommendations of the hearings examiner, including the $7,109,551 award to El Paso Electric. The City sought judicial review of the Commission's order in the district court. *See* Administrative Procedure Act, Tex.Gov't Code Ann. § 2001.171 (West 1995); PURA, §§ 24(b), 69 (West Supp.1995). The district court affirmed the Commission's order. The City appeals from that judgment, contending that the Commission should have disallowed some of El Paso Electric's requested rate case expenses and should have allowed the City to recover a greater amount for its rate case expenses.

**4.** Utilities from the states of California, Arizona, New Mexico, and Texas, including El Paso Electric, owned interests in the ANPP, and in 1984 agreed to bear the costs of an audit of the construction prudence of the ANPP. The costs were incurred in anticipation of prudence hearings before the utilities' respective public utility commissions. The 1984 audit was never completed;

## DISCUSSION

### I. Prudence Audit Expenses

In its first point of error, the City contends that the district court erred by affirming the Commission's order allowing El Paso Electric to recover costs that were not supported by substantial evidence in the form the Commission required. Specifically, the City asserts that El Paso Electric failed to present any evidence to support its claim that the expenses of $7,109,551 the ANPP charged El Paso Electric for the prudence audit ("prudence audit expenses") were reasonable and necessary.

In conducting a substantial-evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore,* 759 S.W.2d at 116. The appealing party bears the burden of demonstrating a lack of substantial evidence. *Charter Medical,* 665 S.W.2d at 453. The appealing party cannot meet this burden merely by showing that the evidence preponderates against the agency decision. *Id.* at 452. If substantial evidence would support either affirmative or negative findings, we must uphold the agency decision and resolve any conflicts in favor of the agency decision. *Auto Convoy Co. v. Railroad Comm'n,* 507 S.W.2d 718, 722 (Tex.1974).

### The Evidence

At the initial hearing, El Paso Electric introduced testimony from Ivor Samson, an

El Paso Electric voluntarily withdrew after unilaterally concluding that the audit would be unfairly biased against it. In Docket 8018, El Paso Electric sought to recover its costs incurred during the 1984 audit as well as its expenses for audit procedures it participated in after the dissolution of the 1984 audit.

attorney who based his conclusions on his experience as lead attorney in a California case concerning the prudence of nuclear power plant expenses and his general familiarity with similar cases. Samson's testimony was offered to establish that the *efforts* El Paso Electric took to demonstrate prudence were reasonable. Samson reviewed El Paso Electric's actions in preparing evidence of prudence for hearings, including the company's cost-sharing arrangements allowing it to "piggyback" on the efforts of other co-owners of the ANPP; he concluded this method was "more cost effective, less duplicative and the only practicable way" for a comparatively small utility like El Paso Electric to have prepared the comprehensive testimony necessary to demonstrate prudence to the Commission. Samson also reviewed the reasonableness of the consultant efforts and charges for the establishment of prudence. He testified that although some of the hourly consultant charges were quite expensive, the rates were "simply a reflection of the marketplace" and that the specific measures used to control consultant costs and numbers had been effective. Samson acknowledged that he had not verified the reasonableness of the *costs* El Paso Electric incurred in the rate case proceedings as far as the prudence audits were concerned.

El Paso Electric also introduced testimony from Raymond Hobbs, a representative of the Arizona Public Service Company, who was responsible for coordinating the monitoring of costs incurred in the prudence audits and the verification of the accuracy of costs charged to El Paso Electric. Hobbs testified about the specific steps taken to insure the accuracy and reasonableness of costs charged to El Paso Electric: he discussed budgeting processes that addressed needs, resources available to meet those needs, costs, and time constraints. He also discussed invoice verification procedures to ensure that services rendered were technically and professionally satisfactory and that duplicate billings and inadvertent over-expenditures did not occur. He testified about accounting procedures used and affirmed the mathematical accuracy of those procedures. Hobbs also explained two exhibits summarizing and breaking down El Paso Electric's costs into categories such as consultant, legal, and contractor costs; the summaries include invoice logs detailing costs allocated to El Paso Electric for prudence audit expenses. Hobbs additionally testified about steps taken to ensure cost-effective use of consultants. On cross-examination, Hobbs testified that he had an opportunity to review, to his knowledge, every invoice submitted by consultants to satisfy himself of the accuracy of costs and had reviewed all costs presented for reimbursement. Hobbs concluded that the costs El Paso Electric incurred were reasonable and properly supported in the sense that they were mathematically accurate.

El Paso Electric additionally introduced affidavits from numerous consultants involved in the prudence audits whose expenses El Paso Electric included in its reimbursement request. The affidavits identified the type and scope of the consultants' work and conformed with the guidelines contained in Examiner's Order No. 3 by indicating that the affiant had informally audited the invoices related to the proceeding and affirmed that the charges and rates were reasonable, the amount of each service was reasonable, the calculation of charges was correct, there was no double billing, and that none of the charges were recovered through reimbursement for other expenses. El Paso Electric also introduced the affidavit of George Lyons, an attorney, which discussed the legal services his law firm performed for El Paso Electric during the audits and the services of eight of the consultants whose affidavits had not been prepared in time for filing before the hearing in Docket No. 8018. El Paso Electric did not submit an affidavit that itemized the number of hours the individual consultants worked or the hourly rates charged.

On remand to the hearings examiner, El Paso Electric offered into the record without objection two exhibits of spreadsheets listing the hourly rates and number of hours charged for each consultant or attorney who worked on the prudence issues or audits. The exhibits were created from information contained in seventeen banker's boxes, sixteen of which were available in the hearing room during the remand hearing.

### The City's Substantial Evidence Challenges

#### Initial Hearing

■■■ The City challenges El Paso Electric's evidence of the reasonableness and necessity of its costs incurred during the prudence audits on several grounds. First, the City asserts that because all the evidence El Paso Electric presented regarding costs of the prudence audits was not in the form designated in Examiner's Order No. 3, the Commission, by concluding that El Paso Electric's costs were reasonable and necessary, failed to enforce its own strict-scrutiny standard and its conclusion is thus not supported by substantial evidence. Assuming without deciding that El Paso Electric failed to follow the evidentiary procedural requirements set out in Examiner's Order No. 3, we conclude that this fact, in itself, does not indicate that the Commission erroneously failed to apply strict-scrutiny review to the evidence or that the evidence does not support a conclusion that the costs were reasonable and necessary. A state agency like the Commission is the judge of the weight to be accorded evidence before it. *Southern Union Gas Co. v. Railroad Comm'n*, 692 S.W.2d 137, 141 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *see Gulf States Utils. Co. v. Public Util. Comm'n*, 841 S.W.2d 459, 474 (Tex. App.—Austin 1992, writ denied). The Commission thus has broad discretion to determine which requested expenses should be allowed. In any event, Examiner's Order No. 3 acknowledges that it only offered "guidelines" constituting "nothing more than suggestions for the type and extent of testimony and other evidence the Commission may expect in support of request for reimbursement of rate case expenses."[5] The City's substantial evidence challenge on this ground is without merit.

■■■■ The City next submits that the Commission's decision is not supported by substantial evidence because the Commission failed to consider its own identified factors in determining the reasonableness of requested expenses constituting legal and consulting fees. A utility's requested rate case expenses will be reimbursed if the Commission finds them to be reasonable. *See* PURA § 39(a) (providing for utility rates to be set at levels allowing utility to recover its "reasonable and necessary operating expenses"). However, neither PURA nor Texas case law defines "reasonable" as it should be applied to the Commission's review of requested rate case expenses in the form of consulting and legal fees. The Commission thus argues that its determination of reasonableness is analogous to the trial court's determination of the reasonableness of attorney's fees and costs of litigation and includes consideration of factors like: (1) time and labor required; (2) nature and complexities of the case; (3) amount of money or value of property or interest at stake; (4) extent of responsibilities the attorney assumes; (5) whether the attorney loses other employment because of the undertaking; and (6) benefits to the client from the services. *See Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148–49 (Tex.App.—Houston [1st Dist.] 1986, no writ). The City does not disagree with the Commission's attorney's fees analogy, but instead argues that El Paso Electric failed to present evidence of the identified *Smith & Lamm* factors or of usual or customary fees, *see* Tex.Civ.Prac. & Rem.Code Ann. §§ 38.001, .003 (West 1986), and that the Commission abused its discretion by determining reasonableness without considering any of the identified factors.

Even assuming that the *Smith & Lamm* factors govern the Commission's determination of reasonableness of requested expenses, we note that these are only factors "to be considered." 714 S.W.2d at 148. Thus, we recognize that the Commission may consider other factors in addition to or in place of the *Smith & Lamm* factors. Nevertheless, contrary to the City's assertion, the agency record contains some evidence of the *Smith & Lamm* factors, including, but not limited to, the nature and complexity of the two prior docket cases, the responsibilities attorneys and consultants assumed, and the amount of

---

**5.** The Commission has discretion to proceed on an ad hoc basis in its attempts to define proper standards to apply to cases where it ha⌟ not had

sufficient experience. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 188–89 (Tex. 1994).

money charged for attorney and consultant services. Since the record contains evidence of some *Smith & Lamm* factors, we cannot say, without indication to the contrary, that the Commission abused its discretion by failing to consider those factors or that the Commission's decision is not supported by substantial evidence because the Commission failed to consider those factors.

Looking at the agency record evidence from the initial hearing as a whole, we conclude that reasonable minds could have reached the same conclusion as the Commission in regard to the reasonableness of the requested prudence audit fees. Substantial evidence of the reasonableness of the fees exists in the form of Samson's expert testimony that El Paso Electric's prudence efforts were reasonable (i.e., that the amount of services provided was reasonable), Hobb's testimony that the prudence audit costs were carefully budgeted, monitored, and verified, and consultant affidavit testimony that consultant services were performed, that charges related to those services as well as the amount of services were reasonable, and that charges were correctly calculated.

■ The City maintains that the consultant affidavits are not substantial evidence of reasonableness of costs because they are hearsay[6] not in compliance with section 18.001(c) of the Civil Practice and Remedies Code. *See* Tex.Civ.Prac. & Rem.Code Ann. § 18.001(c) (West 1986). El Paso Electric, admitting at the initial hearing that the consultant affidavits are hearsay, contends that the parties intended the affidavits to be hearsay. As such, El Paso Electric submits that the City, by agreeing to the presentation of proof by affidavits, waived any objection to that procedure. At the prehearing conference, the City's attorney stated:

I'm trying to minimize expenses ... whereby we submit that [outside consultant] information by affidavit which, with the agreement of the parties, can become part of the record and that information can be there sufficiently in advance of the hearing so that if a particular party has

some difficulty with the statements or the information contained therein or ... [the hearing examiner] wants to examine that particular individual or someone on those particular bills, we can set that up for the hearing. If we file those in advance and get it before everybody—otherwise, they can be admitted—that would be, I would think, a preferable procedure and save expense.

The City responds to El Paso Electric's waiver argument by stating that it could not anticipate that El Paso Electric would attempt to submit inadmissible affidavits; it claims that its agreement to submit affidavits in lieu of live testimony is not tantamount to a stipulation that all affidavits proffered are admissible. We agree. Regardless of the procedures the parties agreed to in regard to the filing of affidavits, some of the affidavits may still have been inadmissible. Upon timely objection on proper grounds, the City could have preserved its argument that the Commission should not have considered the affidavits.

■ Nevertheless, we conclude that the City waived its right to object to the admissibility of the affidavits on the basis of hearsay. Although Examiner's Order No. 3 does not specifically refer to the procedures for admitting affidavits into the agency record, the prehearing conference offers insight into the parties' intentions in regard to the affidavits. As illustrated in the excerpt quoted above, the parties clearly contemplated the filing of affidavits to reduce the expenses of having the consultants testify. As such, the possibility existed that some affidavits could contain hearsay statements. The parties provided a mechanism to remedy the admission of hearsay if an opposing party so objected: if a party decided cross-examination of an individual consultant was necessary, that consultant would appear at the hearing. The hearings examiner summarized the affidavit procedure in its report to the Commission:

At the May 31, 1988, prehearing conference, the parties discussed the possibility

6. *See* Tex.R.Civ.Evid. 801. Rules of evidence, as applied in nonjury civil cases in district court, apply to agency contested case proceedings. Administrative Procedure Act, Tex.Gov't Code Ann. § 2001.081 (West 1995).

of using affidavits instead of live testimony. It was decided to set up a procedure whereby the consultant's (sic) who participated in either the prudence case or the rate case would file affidavits well in advance of the hearing. If a party decided it was necessary to cross-examine the individual consultant then that consultant would be brought to the hearing.... All the parties agreed to this procedure.

Because the parties contemplated from the outset that the consultant affidavits could, in effect, contain hearsay, we conclude the City cannot complain about the inadmissibility of the affidavits on hearsay grounds.

However, even if the City did not waive its right to make a hearsay objection, and assuming section 18.001 of the Civil Practice and Remedies Code applies to an agency proceeding, the affidavits would still be admissible over the City's particular objection. Section 18.001 does not address the *admissibility* of an affidavit concerning cost and necessity of services but only the *sufficiency* of the affidavit to support a finding of fact that a charge was reasonable or a service was necessary. Section 18.001 provides in pertinent part:

> [A]n affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is *sufficient evidence to support a finding of fact* by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex.Civ.Prac. & Rem.Code Ann. § 18.001(b) (West 1986) (emphasis added). Moreover, in order to constitute sufficient evidence, the affidavit must: (1) be taken by an officer with authority to administer oaths; (2) be made by the provider of the service or the person in charge of records showing the service provided and the charge made; and (3) include an itemized statement of the service and charge. *Id.* § 18.001(c). Section 18.001 makes no reference to requirements for admissibility of affidavits.

We conclude that even though the consultant affidavits did not include itemized statements of hours worked or hourly rates charged but included only sworn affirmances that the hours worked and rates charged were reasonable, substantial evidence still exists to support the Commission's order allowing El Paso Electric's prudence audit expenses.

### On Remand

The City also asserts substantial evidence challenges to the remand proceedings. The City contends that the evidence on remand was totally lacking in probative value to establish the reasonableness of El Paso Electric's prudence audit expenses and that the Commission thus failed to hold El Paso Electric accountable for its burden of proof. We agree with the City that, by itself, the remand evidence is inadequate to establish the reasonableness of El Paso Electric's prudence audit expenses. However, the City acknowledges that the remand did not provide for additional presentation on the issue of reasonableness; the examiner concluded that the question of whether El Paso Electric's requested prudence audit expenses were reasonable and necessary was outside the scope of the remand.

Even though El Paso Electric's remand evidence did not establish reasonableness, the Commission did not fail to hold El Paso Electric accountable for its burden of proof. The agency record from the initial hearing contains substantial evidence to establish the reasonableness of El Paso Electric's requested prudence audit expenses in the amount of $7.1 million. In addition, the remand evidence was effectively before the Commission in the initial hearing. On remand, El Paso Electric produced boxes of invoices and other documentation available through discovery and filed as exhibits spreadsheets summarizing the documentation contained in the boxes. The spreadsheets listed the hourly rates and number of hours charged by each consultant or attorney who worked on the prudence case. The information summarized in the spreadsheets is directly referred to in each consultant affidavit, which affirms that "the individual charges and rates are reasonable" and "the amount of each service is reasonable."

Examiner's Order No. 3 provided that the underlying documentation referred to in the

affidavits should not be included as exhibits to testimony or affidavits because, by itself, the documentation would not substantiate a request for reimbursement. The examiner explained at the prehearing conference: "The invoices and other supporting documentation for the rate case expenses are not in and of themselves demonstrative of the reasonableness of that expense. I think they probably are very helpful in determining the mathematical accuracy of the requested amounts...." The remand evidence the Commission ordered thus merely confirms that the underlying documentation already referred to and sworn to in the consultants' affidavits actually exists and instead of establishing reasonableness, bears simply on the mathematical accuracy of the requested expenses. The Commission held El Paso Electric to the proper burden of proof.

█ The City further argues that since the spreadsheets introduced on remand did not exist at the time of the original hearing or at the time of the remand order, they cannot be considered evidence within the meaning of the remand order. However, the City has waived any objections to the form of the evidence introduced on remand because it did not timely object to the spreadsheet exhibits when they were offered as evidence into the agency record.

Because we conclude that the record contains substantial evidence to support the Commission's conclusion that El Paso Electric's requested prudence audit expenses were reasonable and necessary and that the remand hearing did not involve proof of reasonableness nor did it need to, we overrule the City's first point of error.[7]

## II. The City's Disallowed Expenses

█ In its second point of error, the City asserts that the district court erred by affirming the order of the Commission to the extent that the Commission's order did not allow the City to recover all reasonable costs of its participation in Docket Nos. 7460 and 7172. *See* PURA § 24(a). Specifically, the City complains that the Commission abused its discretion by limiting the City's recovery for the services of the assistant city attorney to an hourly rate of $39.54 when there was no evidence that the City's requested reimbursement amount for a $75 hourly rate was not reasonable.[8]

The hourly rate requested by the City was composed of the following elements:

| | |
|---|---|
| Salary and Fringe Benefits for Assistant City Attorney Nanette Williams | $ 36,590 |
| 75% of Salary for Ms. Williams's Legal Secretary | 17,308 |
| 5% of Salaries of the City Attorney and First Assistant City Attorney | 6,100 |
| 5% of Administration Costs for Contractual Services and Materials | 9,453 |
| Office Space (1/22 of the City's Municipal Building at $8.50/sq. ft.) | 6,375 |
| 5% of Overhead Costs | 11,611 |
| 5% of Annual Cost of Mayor and City Council | 23,179 |
| Total Annual Costs | $110,616 |

The City divided the annual cost by 1,400 billable hours[9] to obtain an hourly rate of $79.01. The City then rounded that figure down to a $75.00 hourly rate. The $39.54 hourly rate the Commission allowed was based on a disallowance of the City's requests to recover five percent of the annual salaries of the city attorney and first assistant city attorney, $8.50/sq.ft. for office space allocated to Williams, and five percent of the

---

7. Because we conclude substantial evidence exists in the agency record from the initial hearing supporting the Commission's final reimbursement award for El Paso Electric's prudence audit expenses, we do not address the City's other substantial evidence challenges complaining about discovery, the absence of testimony of an attorney from the law firm providing services to El Paso Electric for the prudence audit, and the alleged reliance of Commission staff on a Coopers & Lybrand audit instead of reviewing underlying documentation of expenses.

8. We initially note that the City had the burden to prove the reasonableness of its rate case expenses. None of the other parties had an obligation to disprove the reasonableness of the City's request.

9. This figure was calculated based on six-hour work days.

annual costs of the mayor and city council. The other elements of the City's request were fully allowed resulting in a total annual cost of $74,962. The Commission divided that figure by 1,896 annual billable hours, based on eight-hour work days.

■ The reimbursement allowed limited the City's recovery to its out-of-pocket costs directly attributable to its participation in the case; in other words, the Commission limited the City's recovery to costs actually incurred. PURA provides that municipalities may be reimbursed for the "reasonable costs" of litigation services in ratemaking proceedings. PURA § 24(a). The Commission has thus interpreted section 24(a) of PURA to allow recovery only for a municipality's "reasonable costs incurred" for litigation services in ratemaking proceedings. We agree with the Commission's interpretation: a reimbursement contemplates an actual expenditure. The examiner's initial report to the Commission explained: "Section 24 of PURA ... requires that before rate case expenses can be reimbursed, they must actually be incurred."

■ The City does not appear to challenge the Commission's determination that some of the costs the City requested were not out-of-pocket costs. Instead, the City challenges the Commission's interpretation of PURA by stating that no Texas cases support the Commission's determination to disallow its other requested expenses. As support for its argument, the City cites to Texas and federal cases discussing the recovery of reasonable attorney's fees. Assuming the validity of the City's analogy of its disputed expenses to attorney's fees,[10] we note the reasonableness of attorney's fees is a question of fact. *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.*, 754 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Consequently, we are constrained by the well-known rules governing our review of agency fact findings: we will affirm the agency decision if substantial evidence supporting the agency action exists in the record. *Charter Medical*, 665 S.W.2d at 452. We conclude that substantial evidence sup-

ports the Commission's award of the City's expenses as calculated. The City's argument that the Commission erred in disallowing some requested expenses since the reasonableness of the disallowed costs was unrebutted is unpersuasive. The law does not require the Commission to accept the City's conclusion of what is reasonable and award it an amount in excess of actual costs. *El Paso Electric Co. v. Public Util. Comm'n*, 903 S.W.2d 425, 441–42 (Tex.App.—Austin 1995, no writ h.) (on rehearing); *see* PURA § 24(a) (allowing reimbursement for reasonable costs). We overrule the City's second point of error.

## CONCLUSION

Substantial evidence in the record supports the Commission's allowance of El Paso Electric's prudence audit expenses and the disallowance of the City's requested costs that were not incurred during the ratemaking proceedings in Docket Nos. 7460 and 7172. Having overruled both of the City's points of error, we affirm the judgment of the district court.

Affirmed.

PER CURIAM.

The parties have filed a joint motion to dismiss. The parties' joint motion is granted in part and overruled in part. Tex.R.App.P. 59(a)(1)(A).

The judgment of this Court, dated August 16, 1995, is withdrawn; the judgment of the trial court is vacated and the cause is dismissed in accord with the settlement agreement of the parties. The opinion of this Court dated August 16, 1995 is not withdrawn.

Judgment Vacated and Cause Dismissed on Joint Motion.

---

10. We note that technically, PURA § 24 does not authorize a municipality to recover its reason-

able attorney's fees, but only reimbursement for its reasonable costs. *See* PURA § 24(a).