TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00275-CV






Bruce Pistocco and Alliance Battling Landfill Expansion, Appellants



v.



Texas Natural Resource Conservation Commission and


Browning-Ferris, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-12347, HONORABLE MARGARET COOPER, JUDGE PRESIDING






 Bruce Pistocco and Alliance Battling Landfill Expansion appeal the district court's
affirmance of the Texas Natural Resource Conservation Commission's ("Commission") order
approving in part and rejecting in part the proposal for decision ("PFD") of the administrative law
judge ("ALJ"). Appellants contend that the Commission's order exceeded the scope of the
Commission's authority; was not supported by substantial evidence; was arbitrary, capricious, and
an abuse of discretion; and deprived appellants of due process by including special conditions
subject to review without hearing. We will affirm the district court's judgment.


BACKGROUND


 This appeal arises from the Commission's amendment of a municipal solid waste
permit for a landfill near Canyon, Texas. The landfill is operated by appellee-intervenor
Browning-Ferris, Inc. ("BFI"). BFI sought to increase the height of the existing landfill and to
amend the permit to comply with new environmental regulations, allowing use of land adjacent
to the existing landfill. See 56 Fed. Reg. 50978 (1991), codified at 40 C.F.R. parts 257 and 258
(1999). Texas incorporated the federal landfill design criteria. See 30 Tex. Admin. Code
§§ 330.230-330.242 (1999) (approved by Environmental Protection Agency at 58 Fed. Reg.
65986 (1993)). The ALJ proposed that the Commission permit the upgrades and lateral
expansion, but deny the vertical expansion of the existing landfill. The Commission rejected the
proposed limitation, deciding instead to permit the upgrades and the full requested expansion of
the landfill.

 The Commission's action culminated a multi-year process. In 1985, BFI's
predecessors received Permit No. 1663, authorizing operation of a 46-acre landfill known as the
East Fill. In 1987, the permit was amended (becoming Permit No. 1663-A) to allow lateral
expansion onto a 73-acre tract now called the West Fill. BFI bought the facility in 1990. In
1992, Pistocco bought a 340-acre plot that adjoins the landfill's southern edge. In 1994, BFI
applied for amendment of its permit (application for Permit No. 1663-B).

 Permit holders seeking to change the conditions of operating their landfills may
request temporary authorizations and modification or amendment of the permit. Temporary
authorizations allow parties who have pending applications for modifications or amendments to
engage in nonpermitted activities for up to two 180-day periods to avoid disruption of waste
management. See 30 Tex. Admin. Code § 305.70(j). Modifications may be limited in number
or duration. For instance, a height increase may be granted in limited circumstances and may be
a modification only once; subsequent requests for increases must be submitted as permit
amendments. Id. § 305.70(h). Amendments may be granted for good cause, such as a change
in the facility or its activity, discovery of new information, enactment of new regulations, or
occurrence of events beyond the permittee's control. Id. § 305.62(d).

 The new environmental regulations include some provisions that apply to all
landfills and some that apply only to landfills like the West Fill that first accepted waste after
October 9, 1993. New landfills and lateral expansions of existing landfills must have in place a
groundwater-protecting design, which can include liners and leachate collection systems, before
they can receive waste. See id. § 330.200(a). This requirement does not apply to existing
landfills like the East Fill. See id. Other regulations, like those requiring monitoring of
groundwater pollutants, apply to both new and existing landfills. Landfills must test to establish
groundwater contents and to detect pollutants. See id. §§ 330.230-330.234. A statistically
significant deterioration in groundwater quality triggers a new level of monitoring called
assessment monitoring. See id. § 330.235. Corrective actions follow if the assessments
demonstrate the need. See id. §§ 330.236-330.238. BFI had not detected volatile organic
compounds ("VOC") in groundwater when it completed its application for amendment in April
1994. After detecting VOCs and a statistically significant change in groundwater quality, BFI
progressed to assessment monitoring of the groundwater in 1997.

 While its amendment application was pending in 1994 and 1995, BFI requested
temporary authorization to exceed the East Fill height limit of Permit No. 1663-A. BFI requested
and received 180-day authorizations in June 1994 and January 1995 that allowed piling of trash
ten feet higher than the previously approved final contours of the East Fill. When these temporary
authorizations expired, BFI requested a modification raising the height of the East Fill to allow
the landfill to continue operating while the Commission considered the amendment application. 
BFI conceded some requested height in the West Fill to compensate for the added height of the
East Fill. The Commission granted this third request for height modification in August 1995.

 The ALJ conducted hearings in May 1996, September 1996, and March 1997. She
submitted her PFD on May 8, 1997. After considering the application in June and July of 1997,
the Commission issued its order on July 18, 1997. The district court affirmed the Commission's
order on April 9, 1999.


DISCUSSION


 Appellants raise four issues that they contend show the district court erred by
affirming the Commission's order. They challenge the district court's conclusion that the
Commission's order was proper. They attack the Commission's authority to make the decision,
its review of the evidence, and its attachment of special conditions to its order. We will consider
the last contention first because it implicates our jurisdiction over this appeal.

 We can reverse or remand the case for further proceedings if substantial rights of
the appellant have been prejudiced because the administrative findings, inferences, conclusions,
or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the
agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error
of law; (E) not reasonably supported by substantial evidence considering the reliable and probative
evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of
discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(b)
(West 2000).


The Commission's order is final.

 Appellants contend in issue four that the required submission of additional materials
for Commission review renders the permit order non-final; they assert that issuance of this
conditional, non-final order violates Commission rules. They also argue that these post-hearing
submissions deprive citizens affected by the permit of their rights to due process.

 A final agency order is one: (1) that is definitive, (2) promulgated in a formal
manner, (3) with which the agency expects compliance, and (4) that fixes some legal relationship
as a consummation of the administrative process. Star Houston, Inc. v. Texas Dep't of Transp.,
Motor Vehicle Div., 957 S.W.2d 102, 105 (Tex. App.--Austin 1997, pet. denied) (citing
Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers, 806 S.W.2d 230, 232
(Tex.1991)). The Commission can place conditions on permits without impairing finality if the
conditions do not require additional approval by the Commission. See North Alamo Water Supply
Corp. v. Texas Dep't of Health, 839 S.W.2d 448, 450-51 (Tex. App.--Austin 1992, writ denied);
see also Walker Creek Homeowners Ass'n v. Texas Dep't of Health Resources, 581 S.W.2d 196,
198 (Tex. Civ. App.--Austin 1979, no writ). Requiring that an applicant submit revised narratives,
calculations, drawings, and other plans relating to its landfill liner design to account for a water-table level does not necessarily render a permit non-final. North Alamo, 839 S.W.2d at 451. Nor
does requiring plugging of existing water wells, submission of a report about the well-plugging,
submission of a certificate from an engineer that necessary soils testing and landfill lining has
occurred, or compliance with rules regarding closing of a landfill affect the finality of the permit
order. Walker Creek, 581 S.W.2d at 197-98. Conditions that require compliance with existing
regulations or permit provisions and do not require the agency to exercise discretion do not impair
finality. Id. at 198.

 Conditions requiring subsequent approval by the agency, however, can prevent a
ruling from being final. See id. at 197-98. In Walker Creek, this Court held the following
condition rendered an order interlocutory:


Access: Before this site becomes operational, the permittee shall submit to, and
obtain approval from, the Department a site access plan indicating the capability
of the said permittee to construct and maintain an all-weather access road from the
site entrance to an existing public road which will provide access to the site. The
said all-weather access road shall be provided in accordance with the requirements
of [agency regulations].



Id. The requirement that the permittee gain approval of the plan indicated that the Department
would need to hold more hearings and to exercise its discretion regarding the access plan, thus
rendering the permit non-final. Id. at 198. This Court accordingly vacated the district court's
order and remanded to the agency. Id.

 We note initially that none of the special permit provisions requires action by the
permittee "before this site becomes operational" as did the non-final access provision in Walker
Creek. See id. at 197. The special provisions that specify a time frame merely require action by
BFI within a specified time after the permit is issued. Though this distinction alone may take this
case outside the description of non-final permits, other aspects of these provisions further
distinguish them from the non-final access provision in Walker Creek.

 Some of the special permit provisions clearly do not require additional action by
the Commission. Provision A states from what road access will come. Provision B requires
Commission approval for post-closure use of the site, but that does not affect the site's use as a
landfill. Provision F limits the use of alternate daily cover materials to areas within the landfill
meeting specifications. Provision G requires that BFI use erosion controls such as vegetative
cover or an erosion geo-net on areas of the landfill that will not be used for 180 days. These are
directives to BFI that require no further action by the Commission.

 Other provisions require submission of information or reports for Commission
review but do not require approval or other action by the agency. Provision D requires that BFI
modify its application to include information about current conditions in the groundwater at the
site as identified in a letter issued by the Commission in 1996. Provision E requires
supplementation of the application to reflect intensified monitoring of the groundwater. Both
provisions require that BFI supply data and information that did not exist at the time the
application was made. Though they require the provision of data, neither requires the
Commission to make a permitting decision based on this information.

 Even the aspects of Provision C that require monitoring of windblown waste and
may require future Commission approval of waste control devices do not render the permit non-final. Part 1 of Provision C requires BFI to collect windblown waste daily, to document those
collection efforts, or to document why weather conditions prohibited cleanup; this provision
requires no approval by the Commission. Parts 2 and 3 require submission of detailed plans,
specifications, and operational procedures for windblown litter appurtenances for both the site's
perimeter and its active working face. Though the Commission will review these submissions,
there is no provision for approval or rejection; further, the immediate operation of the landfill is
not contingent on approval of these plans because they may not be implemented unless the
monitoring demonstrates the need for waste controls. Finally, Provision C establishes monitoring
procedures for windblown waste, requiring semi-annual reports on the effectiveness of the control
procedures, an annual assessment of those procedures, and, if necessary after the second annual
assessment, the installation of a permanent perimeter windblown litter control appurtenance. 
Though these monitoring provisions require some future action by the Commission based on
future windblown waste reports, they are not a condition precedent to the Commission granting
BFI the permit. They merely augment the existing regulation of windblown waste. See 30 Tex.
Admin. Code § 330.120 (1999). The Commission has decided that BFI can operate the landfill
for at least two years without the appurtenance. Nothing in Provision C renders the permit non-final.

 Neither do these special permit provisions deprive appellants of due process. 
Appellants complain that the provisions requiring future action by the Commission deprive them
of due process because those actions will be taken without their participation. As discussed
above, Provisions A, B, F, and G plainly require no future action by the Commission. Though
the Commission will review data submitted under Provisions D and E, the data will not prompt
a decision-making process regarding the issuance of the permit. At most, the data will provide
a baseline against which data will be compared in making future decisions regarding the permit;
regardless, there is no indication that the Commission will conduct anything more than a
ministerial review of the data submitted following issuance of the permit. Similarly, the subparts
of Provision C requiring cleanup of windblown waste, reports about windblown waste, and design
specifications for windblown litter control appurtenances do not require hearing and approval by
the Commission.

 Only Provision C(3)(c), which concerns whether BFI will have to install a
perimeter waste control device two years after the permit is issued, contemplates a future exercise
of discretion by the Commission. Due process requires but one adequate hearing. Browning-Ferris, Inc. v. Johnson, 644 S.W.2d 123, 127 (Tex. App.--Austin 1982, writ ref'd n.r.e.). 
Appellants participated in the hearing after which the Commission determined that a perimeter
waste control device is not currently necessary. Their complaint that they will later be excluded
from the decision of whether future conditions warrant installation of such a device is not ripe or
well-founded on the current record. Provision C(3)(c) states that, two years after the permit is
issued, the executive director will review reports to determine whether the appurtenance is
necessary; if it is necessary, it "shall be installed and operated in accordance with modifications
approved by the executive director." BFI must provide notice of modifications to the permit. 
See 30 Tex. Admin. Code § 305.70 (1999). Appellants have not shown how Provision C(3)(c)
deprives them of any process that they are due. If anything, appellants have received general
advance notice of how and when the windblown waste issue will be reviewed. We find no
deprivation of due process. We resolve issue four against appellants.

The Commission did not exceed its authority.

 By issue one, appellants contend that the Commission exceeded the scope of its
authority in the manner it modified and amended BFI's permit. Appellants complain that the
Commission lacked the power (1) to grant three successive permit modifications in June 1994,
January 1995, and August 1995, allowing BFI to add ten feet to the landfill, and (2) to let a
temporary solution of dusting loose waste become a minor modification to the permit without
notification to appellants. Appellants concede that the Commission could allow a minor
modification like a one-time increase of ten feet in the height of the landfill, but contend that three
separate, cumulative ten-foot height increases amount to an amendment made without the
processes required for permit amendments.

 We conclude that these actions by the Commission are not properly before us. Any
appeal of the June 1994 and January 1995 temporary authorizations is moot because they expired
by their own terms 180 days after they were granted. The temporary authorizations and
modifications affected Permit No. 1663-A, while this appeal concerns Permit No. 1663-B. The
district court on April 8, 1999 dismissed as moot the appeal of other modifications to Permit No.
1663-A in District Court Cause No. 96-15254. This appeal of Permit No. 1663-B was taken from
District Court Cause No. 97-12347, decided on April 9, 1999.

 Even if the modifications were before us, we find no reversible error. Appellants
concede that the Commission could authorize a single ten-foot modification, but argue that the
Commission approved an aggregate thirty-foot height increase. The record, however, shows that
the Commission repeatedly authorized filling the same ten feet. The Commission's June 1994 and
January 1995 actions were temporary authorizations. See 30 Tex. Admin. Code § 305.70(j). The
June 1994 authorization allowed BFI to pile waste "ten feet above current approved final
contours" for 180 days; this expired on its own terms in December 1995, thus causing a reversion
to the previous height limit. The January 1995 authorization for BFI to pile waste "ten feet above
current approved final contours" for 180 days, described as "an extension to the temporary
authorization period for overfill," thus authorizes the same height increase; when the January
1995 temporary authorization expired in July 1995, the approved height again reverted to the
previous contour. The August 1995 modification, pursuant to 30 Texas Administrative Code
sections 305.70(g)(23) and 305.70(h), thus added height to the original contours of Permit No.
1663-A because both temporary augmentations of those contours had expired. This was the only
height increase granted under subsection (h). We find that these actions are within the
Commission's authority under section 305.70.

 Appellants' challenge to the modification of the permit from requiring daily cover
of the working face of the landfill to allow dusting of wastes is similarly unfounded. On
November 20, 1996, the Commission decided to allow "dusting" as a temporary authorization
rather than a modification. (1) As above, this temporary authorization expired by regulation and its
own terms 180 days after it was issued. See 30 Tex. Admin. Code § 305.70(j) (1999). Also as
above, this dusting authorization affected Permit No. 1663-A. Both the authorization's expiration
and the subsequent issuance of Permit No. 1663-B render our consideration of the authorization 
moot. Even if the issue were not moot, the Commission's executive director can authorize
alternate windblown waste control methods as a temporary measure or a modification. See id.
§§ 305.70(g)(17) & 305.70(j). We resolve issue one against appellants.


The Commission did not act arbitrarily or capriciously or misuse its discretion.

 The dusting authorization and height adjustments also appear to be the subject of
issue three, (2) by which appellants challenge the district court's affirmance, charging that the
Commission's ruling was arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion. Appellants contend that the Commission "removed from the
proceedings certain pieces of the contested application and granted the application piecemeal."

 The structure of the Administrative Code and the length of the amendment process
support the Commission's use of these stopgap measures during the amendment process. BFI
filed its amendment application on April 7, 1994; the Commission approved the application on
July 18, 1997. During this period, BFI requested relief to avoid closing the landfill and to control
windblown waste. BFI estimated that, without an increase in authorized waste height, the landfill
would reach its permitted capacity on August 1, 1994--almost three years before the amendment
was approved. The Commission's temporary authorizations and the modification of the height
limit were within the scope of the regulations. See 30 Tex. Admin. Code § 305.70 (1999). 
Though denying the dusting authorization likely would not have closed the landfill, appellants fail
to show any abuse of discretion in the granting of a temporary authorization to try an alternative
method of controlling windblown waste; rather, as discussed above, the authorization is within
the scope of section 305.70. Appellants' chief complaint seems to be that the stopgap measures
conferred relief similar to that requested in the amendment application, but we find no support for
the proposition that requesting a particular amendment bars a permittee from seeking that same
relief either temporarily or through modification of the existing permit. Indeed, there may be
some benefit to granting the stopgap measures; in this case, the stopgap measures kept the landfill
open and allowed BFI and the Commission to assess the efficacy of dusting before permanently
including it in the amended permit. We resolve issue three against appellants.


The challenged portions of the Commission's order were supported by substantial evidence.

 By issue two, appellants contend the district court erred by affirming the
Commission's ruling because it was not supported by substantial evidence. The parties dispute
which standards of review the Commission should have used when reviewing the ALJ's decision. 
Appellees argue that we should permit the Commission to change any ALJ determination if it
adequately explains its departure and if the record before the ALJ supports the Commission's new
ruling. (3) See Tex. Gov't Code Ann. § 2003.047(i)(2) (West 2000). Appellants argue for the more
restrictive standards for reversing findings of fact and conclusions of law found in Texas Health
and Safety Code section 361.0832 (West Supp. 2000). The Health and Safety Code sets up
different standards for different types of ALJ decisions within a single PFD. The Commission
can overturn only those underlying findings of fact that are not supported by the great weight of
the evidence. Id. § 361.0832(c). The Commission can overturn only those conclusions of law
that are clearly erroneous in light of precedent and applicable rules. Id. § 361.0832(d). Finally,
the Commission can depart for reasons of policy from decisions in PFDs that involve an "ultimate
finding of compliance with or satisfaction of a statutory standard the determination of which is
committed to the discretion or judgment of the Commission." Id. § 361.0832(e).

 These standards can be read together. (4) The Government Code broadly permits the
Commission to amend the PFD, and the Health and Safety Code provides standards of review the
Commission must use in deciding whether to overturn findings or conclusions in the PFD. The
Government Code specifically requires that the Commission's substituted findings and conclusions
be supported by evidence in the record before the ALJ.

 Though appellants argue that the Commission unjustifiably changed the ALJ's
findings, many of the Commission's findings and conclusions they challenge are verbatim
adoptions of those in the PFD's proposed order. The PFD contains 160 findings of fact and
thirty-nine conclusions of law. The Commission deleted some of these, altered others, and
included nine additional findings (one of which actually adopts another ALJ finding) and eight
additional conclusions. Appellants do not expressly object to the deletion of any of the findings. 
Of the thirty-two findings of fact appellants challenge, twenty-five restate the ALJ's proposed
findings verbatim, and seven are the Commission's additional findings. (5) Of the twenty-six
conclusions of law appellants challenge, seventeen restate the ALJ's proposed conclusions
verbatim, one deletes a phrase from the proposed conclusion, and eight are the Commission's
additional conclusions. (6)

 We reject the challenge to the findings and conclusions that were adopted verbatim. 
Appellants argue that the Commission erred by not following the ALJ's proposal. Nowhere do
they argue that the Commission should have overturned any of the proposed findings and
conclusions. They therefore have waived their challenge to such findings and conclusions by
failing to brief that argument. See Tex. R. App. P. 38.1(h); see also Helle v. Hightower, 735
S.W.2d 650, 654-55 (Tex. App.--Austin 1987, writ denied). They have waived challenge to the
verbatim adoption of findings of fact 30, 31, 38, 39, 45, 55, 56, 57, 61, 66, 85(a)-(d), 90, 107,
124, 126, 133, 136, 148, 149, 150, 152, 158, 159, 160, and 163, and conclusions of law 6, 8,
15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 28, 32, 33, and 35. Alternatively, we conclude the
findings are supported by substantial evidence, and find no reversible error in the conclusions of
law.

 The only change in a finding or conclusion that appellants challenge is the deletion
of the italicized phrase from conclusion seven, which provides as follows:


 If constructed and operated in accordance with permit provision, the Solid Waste
Disposal Act, and the 30 Tex. Admin. Code Chapter 330, a permit amendment
authorizing expansion of the West Fill Area and the implementation of Subtitle D
upgrades, including the use of a final cover for the entire Facility, will not
adversely affect the public health or the environment.


Because the deletion actually decreases the scope of the conclusion by limiting it to Subtitle D (7)
upgrades and excluding the West Fill expansion, it actually favors appellants' opposition to the
amendment of the permit. Even if the district court erred by affirming the Commission's edit,
appellants were not harmed. Because the substance of the deleted portion is included in the
Commission's Conclusion 44, we will review it in that context.

 We turn to the additional findings. The standard of review discussed above
concerns the Commission's ability to overturn ALJ's findings of fact. See Tex. Health & Safety
Code Ann. § 361.0832(c) (West Supp. 2000). These additional findings are new findings, not
overturned findings, and therefore are not subject to section 361.0832. (8) We therefore can use the
traditional standard for reviewing administrative factual findings and will review the
Commission's new factual findings for support by substantial evidence. See Heat Energy
Advanced Tech., Inc. v. West Dallas Coalition for Envtl. Justice, 962 S.W.2d 288, 295-96 (Tex.
App.--Austin 1998, pet. denied). Appellants must show the lack of substantial evidence, which
involves more than showing that the evidence preponderates against the decision. See City of El
Paso v. Public Util. Comm'n, 916 S.W.2d 515, 520 (Tex. App.--Austin 1995, writ dism'd by
agr.). The appellate court has no duty to make an independent search of the record for evidence
supporting appellants' position. See Wade v. Commission for Lawyer Discipline, 961 S.W.2d
366, 373 (Tex. App.--Houston [1st Dist.] 1997, no writ); see also Brandon v. American Sterilizer
Co., 880 S.W.2d 488, 493 (Tex. App.--Austin 1994, no writ).

 Appellants assert that these findings are not supported by the evidence, are contrary
to the evidence presented, and are improper findings and/or conclusions of law. They assert
finally that findings 165-170 are incorrect conclusions of law.

 We reject the challenges to findings 165-168. Finding 165 accurately paraphrases
the relevant portions of the requirements of 30 Texas Administrative Code sections 330.55 and
330.56. Finding 166 accurately states who section 330.56(e) requires to file a groundwater
characterization report, who it does not require to file a report, how the presence of contamination
affects the contents of the report, and what type of report BFI filed as a result. Finding 167
accurately states the date BFI filed its application and the fact that no groundwater contamination
had been detected then. Finding 168 accurately states the scope of Subchapter I of Chapter 330
and broadly summarizes steps BFI has taken in compliance. The text of the administrative code,
BFI's application, and the record solidly support these findings. Appellants have identified no
evidence in the record contrary to these findings. Even if these should be conclusions of law,
appellants have shown no harm from their being listed as findings of fact.

 The remaining disputed findings are ultimate findings--findings that involve
"compliance with or satisfaction of a statutory standard the determination of which is committed
to the discretion or judgment of the commission by law; the commission may reject a proposal for
decision as to the ultimate finding for reasons of policy only." Tex. Health & Safety Code Ann.
§ 361.0832(e) (West Supp. 2000). Ultimate findings are often mixed questions of fact and law. 
Hunter Indus. Facilities v. Texas Natural Resources Conservation Comm'n, 910 S.W.2d 96, 104
(Tex. App.--Austin 1995, writ denied). We will combine our review of these findings with our
review of Conclusions of Law 40 and 42-47, which also are ultimate findings because they declare
whether BFI's application and evidence comply with statutory and regulatory standards the
Commission must enforce. Conclusion 41 explains why the Commission need not review moot
sections of the ALJ's recommendation.

 Appellants' challenge to the findings and conclusions centers on their contention that
an applicant for permit amendment "must prove by a preponderance of the evidence that its design
and operating procedures are sufficient to prevent groundwater contamination, not just maintain
the ability to monitor and respond to the contamination." Appellants contend that the existence
of contamination in the groundwater downgradient from the landfill, the absence of proof that the
East Fill is not the source of the contamination, and the absence of a plan to line or collect
leachates from the East Fill support the ALJ's rejection of the amendment to increase the height
of the East Fill.

 Our review of the record shows that substantial evidence supports the findings and
conclusions that BFI's application, supporting information, and groundwater monitoring program
satisfied the technical requirements of the statutes and regulations. The applicant, the
Commission, and the ALJ find the application complete, and we are not cited to sufficient
evidence contradicting their determinations.

 More difficult is determining whether the application and supporting information
justify amending the permit to allow BFI to pile more waste on a landfill that may already have
polluted the groundwater. The ALJ urged caution, recommending denial of the East Fill vertical
expansion until the source of the groundwater contamination could be identified and controlled. 
The ALJ opined that the denial could be justified by the Commission's duty to "safeguard the
health, welfare, and physical property of the people and to protect the environment by controlling
the management of solid waste . . . ." Tex. Health & Safety Code Ann. § 361.002(a) (West
1992). She also cited the statute allowing the Commission to deny a permit for reasons pertaining
to public health, water pollution, or land use if it finds that the applicant has committed a
significant environmental violation which it has not made a substantial attempt to correct. See
Tex. Health & Safety Code Ann. § 361.089(f) (West Supp. 2000). The ALJ conceded that other
options existed:


In the end, policy may determine whether BFI's permit application is approved. 
It is likely that implementation of Subtitle D will result in an increase in vertical
landfill expansion applications. Since many of these old landfills lacked liners and
groundwater monitoring requirements, it [is] conceivable that other sites will
discover contamination upon initiating groundwater monitoring under Subtitle D. 
The Commission must decide if it will grant permit amendments despite the
existence of unremediated contamination with the expectation or assumption that
such contamination can be handled administratively through the parallel track
supported by the [Executive Director] and Applicant in this case. In the
alternative, the Commission could require that contamination be remediated prior
to permit approval or at least that evidence be provided to show that remediation
is possible and will be effective in eliminating the existing contamination.


The rules could arguably allow either course.



The Commission chose to rely on the parallel track of monitoring and remediation.

 Though appellants argue and the ALJ agreed that the statutes and regulations would
allow the Commission to deny the permit, none cites any statutory or regulatory provision that
requires the denial. The absence of a proposal to line the East Fill is in keeping with the
regulatory scheme that requires liners only in landfills first accepting waste after October 9, 1993. 
See 30 Tex. Admin. Code Ann. §§ 330.2 & 330.200(a). Appellants did not have the burden to
prove the East Fill was the culprit, but we are cited to and find no regulations requiring BFI to
exculpate the East Fill in order to get a permit amendment. Evidence of contamination does not
mandate denial of the amendment. The existence of contaminants in groundwater may indicate
a problem with the East Fill, but there may be other sources of contamination. Witnesses
identified a nearby, older landfill and flawed test samples as possible sources. Faced with
conflicting evidence, the Commission made the policy decision so aptly described by the ALJ--it
simply chose to follow a different course than she recommended.

 This policy choice underlies and supports the remaining disputed findings and
conclusions. The Commission determined as a matter of policy that the level and nature of the
evidence supplied satisfied its regulations; this decision thus supports Findings 164, 169, and 170
and Conclusions 40 and 42-47. By granting the vertical addition to the East Fill, the Commission
avoided any problems from a height disparity between the proposed West Fill height and the
existing East Fill; the Commission therefore correctly decided in Conclusion 41 that it did not
need to address the ALJ's proposed conclusions establishing procedures for dealing with the
height disparity.

 Because the Commission's ruling was supported by enough evidence to satisfy the
standards of review, the district court did not err by affirming the Commission's decision. We
resolve issue two against appellants.


CONCLUSION


 Having resolved all four issues against appellants, we affirm the judgment of the
district court.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 17, 2000

Do Not Publish
1. "Dusting" is a method to control windblown waste. On windy days, BFI uses a front-end
loader to dump dirt on the waste as it is being unloaded from the trash truck; when the wind dies
down, BFI then moves the dusted trash onto the working face of the dump.
2. Appellants assert that "the piecemeal amendments at issue here were not temporary
variances, nor were they mere modifications of the amendment application, as more fully outlined
in Issue One." This reference to issue one suggests that appellants challenge the height
adjustments and dusting authorization in this point as well.
3. According to BFI, the Commission believes the Government Code alone applies because,
when the Health and Safety Code standards were enacted in 1991, they applied only to industrial
and hazardous wastes. At that time, the Department of Health governed municipal wastes. Thus,
the Commission contends, the Government Code restrictions still apply only to industrial and
hazardous wastes, not municipal wastes.
4. The statutes together create a more stringent standard than either alone. Because the
Commission's order in this cause meets this tougher standard, we need not decide whether the
statutes must be read together or whether, as the appellees argue, the Government Code alone
applies.
5. The Commission adopted verbatim proposed findings 30, 31, 38, 39, 45, 55, 56, 57, 61,
66, 85(a)-(d), 90, 124, 126, 136, 148, 149, 150, 152, 158, 159, 160, and 163, which adopts
ALJ's proposed finding 86. (Appellants purport to challenge finding 84(a)-(d); however, finding
84 has no subparts. Because appellants elsewhere challenge subparts (a) through (d) of finding
85, we will conclude that this is a typographical error and is intended as a second challenge to
finding 85(a)-(d).) The Commission also adopted verbatim findings that appellants asserted were
improper findings or conclusions of law (107) and incorrect conclusions of law (133). The
challenged additional findings are findings 164-170. (We exclude 163 from this list because, as
noted, it is actually a verbatim adoption of proposed finding 86.) 
6. The Commission adopted verbatim proposed conclusions 6, 8, 15, 16, 17, 18, 19, 20, 21,
22, 24, 25, 26, 28, 32, 33, and 35. The edited conclusion is conclusion 7. The challenged
additional conclusions are conclusions 40-47.
7. "Subtitle D" refers to and encompasses the revised design criteria for municipal solid waste
landfills at issue here.
8. These additional findings and conclusions may contradict some findings and conclusions in
the PFD. Indeed the Commission may have deleted some of the proposed findings and
conclusions to avoid conflict with these additional findings. Appellants, however, do not
complain about the deletion of any of the proposed findings or conclusions.



ts the remaining disputed findings and
conclusions. The Commission determined as a matter of policy that the level and nature of the
evidence supplied satisfied its regulations; this decision thus supports Findings 164, 169, and 170
and Conclusions 40 and 42-47. By granting the vertical addition to the East Fill, the Commission
avoided any problems from a height disparity between the proposed West Fill height and the
existing East Fill; the Commission therefore correctly decided in Conclusion 41 that it did not
need to address the ALJ's proposed conclusions establishing procedures for dealing with the
height disparity.

 Because the Commission's ruling was supported by enough evidence to satisfy the
standards of review, the district court did not err by affirming the Commission's decision. We
resolve issu